[S. F. No. 11021. In Bank.—April 1, 1926.]

## MARY PATCHETT et al., Respondents, v. EUGENE L. WEBBER, as Administrator, etc., Appellant.

[1] HOMESTEADS—SECTION 1265, CIVIL CODE, AND SECTION 1474, CODE OF CIVIL PROCEDURE—CONSTRUCTION.—While there was a slight inconsistency in the wording, there was a very vital difference in effect between section 1265 of the Civil Code and section 1474 of the Code of Civil Procedure as they existed in 1876; and as the amendment of March 30, 1874, to the former section was subsequent to the amendment of March 24, 1874, of the latter section, said section of the Civil Code must be regarded as the latest expression of the legislative will and the one which controls the matter of the devolution of homesteads existing at that period.

[2] ID.—DEVOLUTION OF HOMESTEADS—WHAT LAW CONTROLS.—The law which existed at the time of the death of one who had declared a homestead on his property controls the devolution of said homestead.

[3] ID.—SECTION 1265, CIVIL CODE, AND SECTION 1474, CODE OF CIVIL PROCEDURE—CONSTRUCTION.—The main distinction between section 1265 of the Civil Code, as amended in 1874, and section 1474 of the Code of Civil Procedure, as amended in 1874, was that the Civil Code section carried the homestead selected from separate property over to the heirs *or devisees*, whereas the section of the Code of Civil Procedure carried it to the heirs only; and as said Civil Code section, being subsequent in date of approval, controlled, one who had selected a homestead from his own separate property was permitted to dispose of it by will.

[4] ID.—DEVOLUTION OF PROPERTY — ADMINISTRATION. — If property is by law made subject to the testamentary disposition of the owner it becomes a part of his estate and must be administered on in probate in the ordinary way, but where the law declares that certain property shall upon the death of one party vest in another—shall vest in the survivor or in the heirs of the deceased—the rule is that such property goes directly to the person designated without administration and that it is accordingly not a part of the estate of the decedent.

[5] JUDGMENTS—ADMINISTRATOR AS PARTY—EFFECT OF JUDGMENT ON HEIRS.—If property is subject to the testamentary disposition of

2. See 13 Cal. Jur. 526.
3. See 13 R. C. L. 646.
4. See 9 Cal. Jur. 469; 9 R. C. L. 72.
5. See 11 Cal. Jur. 1055.

the owner and thus becomes a part of his estate, the administrator of his estate is permitted to sue or be sued concerning the property without joining the heirs in such litigation, and any judgment in which the administrator is a party is equally binding on all the heirs and on all persons claiming under such administrator.

[6] ID.—HOMESTEAD—EFFECTIVE JUDGMENT.—Where, in a former action to recover homestead property the validity and effect of a portion of the will of the homesteader attempting to devise the property to his widow for her life, with remainder over to designated heirs, was in issue, and the parties stipulated that the homestead property should be awarded to the successor in interest of the widow in consideration of the latter's waiver of all claim to other property involved in the litigation, the subject matter being one over which the trial court had jurisdiction and all the necessary parties being before it, the decree of the court, based upon the stipulation, was binding upon all the parties thereto, if they claimed under the will, and if they claimed as heirs they would take only a part of the property, as the widow would have been entitled to a portion.

[7] ID. — TITLE BY PRESCRIPTION — STATUTE OF LIMITATIONS — PLEADING.—So far as the title to real property is concerned prescription and limitation are convertible terms; and a plea of the proper statute of limitations is a good plea of a prescriptive right.

[8] ID.—QUIETING TITLE—BURDEN OF PROOF.—In an action to quiet title a party must prevail upon the strength of his own title and not upon the weakness of another's; and in such an action it is incumbent upon the plaintiff to show that he or his ancestors had been seised or possessed of the property within five years before the commencement of the action.

[9] ID.—POSSESSION OF LAND—PRESUMPTION.—Where the undisputed evidence shows that a party entered into possession of a tract of land at a certain time and there is no evidence to show a change of possession since that time, it is a case for the application of the presumption that a thing once proved to exist continues as long as is usual with things of that nature.

[10] ID.—TITLE BY PRESCRIPTION—STATUTE OF LIMITATIONS.—In an action to quiet title to real property, where the uncontradicted evidence showed that the plaintiffs and their predecessors, for a period of forty-six years, at least, had not been in possession of the premises, while during that whole period the defendant and his predecessor had been in actual and peaceable possession exercising all the acts of ownership which an ordinary person would

7.  See 1 Cal. Jur. 623.

8.  See 22 Cal Jur. 167; 5 R. C. L. 675,

9,  See 22 Cal. Jur. 170,

have done under like circumstances, the fact that the defendant subdivided the land into lots and sold a part of them did not interrupt his possession and the action is barred by section 318 of the Code of Civil Procedure.

(1) 36 Cyc., p. 1151, n. 53. (2) 29 C. J., p. 789, n. 11. (3) 29 C. J., p. 930, n. 71. (4) 23 C. J., p. 1149, n. 1, 2. (5) 24 C. J., p. 893, n. 45. (6) 2 C. J., p. 259, n. 35; 24 C. J., p. 893, n. 31. (7) 2 C. J., p. 259, n. 32. (8) 32 Cyc., p. 1329, n. 70, p. 1369, n. 3 New. (9) 32 Cyc., p. 1370, n. 15 (10) 2 C. J., p. 50, n. 7, p. 107, n. 98 New.

APPEAL from a judgment of the Superior Court of Napa County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

John T. York, Henry C. Gesford and E. L. Webber for Appellant.

Percy King, Jr., for Respondents.

LENNON, J.—Further consideration of this case after hearing and determination by the court of appeal in the first instance satisfies us that the reasoning and conclusion of the court of appeal are correct and we, therefore, adopt the opinion of Mr. Justice Nourse as the opinion of this court, as follows:

"This action was commenced on December 11, 1922, for the purpose of quieting title to certain property situated in the city of Napa. Plaintiffs had judgment quieting their title to a portion of the property involved and defendant had judgment awarding him the remaining portion. From the portion of the judgment adverse to him the defendant has appealed upon a record prepared under section 953a, Code of Civil Procedure.

"On May 5, 1875, John M. Patchett duly executed and recorded a declaration of homestead upon a tract of land, a portion of which is involved in this suit. The entire tract was his separate property and comprised at the time about six acres upon which he resided with his family. Patchett died on August 13, 1876, leaving children by a former wife, who were the predecessors in interest of the plaintiffs in this action, and also leaving surviving him his wife, Martha

Patchett, and Benjamin Bradshaw, her son by a former marriage. John Patchett left a will by which he devised all his real and personal property of every nature to his wife, Martha, 'to be used and enjoyed by her during the term of her natural life, hereby giving, devising and bequeathing unto my said wife Martha Patchett, the full, free and uninterrupted use, occupation and enjoyment of all the property . . . as fully and freely as I might or could do if living; and from and immediately after her death, I give and devise what *then remains* of the same to the persons hereinafter named' (the predecessors of the plaintiffs in this action). This will was admitted to probate, Martha Patchett was appointed executrix, immediately entered into possession of the six-acre tract and continued in the possession thereof until her death on August 29, 1904, when Benjamin Bradshaw, her only child, was appointed executor of her estate. He took possession of the premises as such executor on October 4, 1904, and continued in possession as such until November 1, 1909, when the entire property was distributed to him in the closing of his mother's estate, at which time he took and continued possession of the home place in his own right.

"On September 23, 1876, Martha Patchett, the widow of John M. Patchett, listed the homestead property in her inventory, which was filed with the papers of the estate of John M. Patchett, and at the same time took possession of the property and it appears in the amended complaint filed in the case of *Patchett* v. *Bradshaw,* which will hereinafter be referred to, that since the 14th day of February, 1879, the said Martha Patchett exercised complete and exclusive control and possession over all of said property, claiming it as her own. From the same pleading it appears that immediately upon the death of Martha Patchett (August 29, 1904), Benjamin Bradshaw entered into the possession of the same premises and claimed the same 'as the property of and belonging to the estate of Martha Patchett, deceased.' The action just referred to was instituted by Charles H. Patchett, one of the plaintiffs herein, and the grandson of John M. Patchett, the original homesteader, he having been duly substituted as administrator with the will annexed of his grandfather's estate following the death of Martha Patchett. The action was brought against Benjamin Bradshaw as the executor of the estate of Martha Patchett and

was for the purpose of securing an accounting of the properties claimed to belong to the estate of John M. Patchett and held in the possession of Martha Patchett during her life, and thereafter held by her executor, and asked particularly for the delivery to the plaintiff as the administrator of the John M. Patchett estate certain real property alleged to belong to that estate, including the property here in suit. That action was commenced on February 20, 1905, and on January 31, 1907, a stipulation was filed, signed by the attorneys for the respective parties therein, in which it was stipulated that the defendant Bradshaw was the sole owner of the property here in suit and designated as the homestead property; that other real property involved in that action should be awarded to the plaintiffs therein, and that the defendant Bradshaw should release all claim thereto; and that the court might enter its judgment and decree in accordance therewith without findings of fact or conclusions of law. Pursuant to that stipulation a decree was duly entered on the 15th day of June, 1907, wherein, after disposing of the various claims in favor of the plaintiff in that litigation, it was ordered and decreed that the so-called homestead property 'vested absolutely in and became the property of Martha Patchett, the surviving widow of said John Patchett, as successor to said homestead,' and that the defendant, as executor of the estate of Martha Patchett, was entitled to the full possession thereof, and that the plaintiff as administrator of the estate of John Patchett was not entitled to the possession of any part thereof 'nor have the heirs, devisees or other legal representatives of said John Patchett, deceased, any right or interest in any portion thereof.' This decree was filed on June 15, 1907. No appeal or other attack was made thereon and it became final in due course of law.

"Subsequent to the entry of the foregoing decree the proceedings in the estate of John M. Patchett were concluded by the filing of a final account and a petition for final distribution by Charles Patchett, the plaintiff in the litigation just referred to. The administrator did not include in either of these documents the homestead property and made no mention of any claim thereto on behalf of the estate or the heirs. In due course a decree of distribution was filed in that estate wherein the entire estate was distributed to the plaintiffs in the action before us or to their predecessors

in interest omitting therefrom, however, all interest in or claim to the homestead property, the property now in suit.

"On June 18, 1909, Benjamin Bradshaw, while in possession of the property as executor and sole heir of his mother's estate, duly filed for record a subdivision of the entire tract of land comprising the homestead. In this subdivision a street was opened directly through the middle of the entire tract and lots were laid out in the usual way, each having a frontage of approximately 54 feet. Thus by the subdivision the six-acre tract was divided into two blocks numbered block 1 and block 2; block 1 containing sixteen separate lots and block two containing fifteen. On November 1, 1909, the entire property, as originally described in the homestead declaration, was distributed to Benjamin Bradshaw in closing the estate of Martha Patchett, and immediately thereafter sales were made and deeds were executed by said Bradshaw conveying some sixteen of the lots as segregated by Bradshaw's subdivision. These deeds were executed over a period commencing November 16, 1909, down to March 4, 1922. All were duly recorded and in each instance the deed described the lot as being a part of block 1 or 2, as shown on the 'Map of Bradshaw's Subdivision, a part of Patchett's Addition in the City of Napa, California,' giving the number and date of the filing of such map. On July 22, 1922, Benjamin Bradshaw died and the defendant, as public administrator of the county, was duly appointed as administrator of the estate.

"This action was commenced on December 11, 1922, by the plaintiffs, who are the descendants of John M. Patchett, deceased, the issue of his marriage prior to his marriage with Martha Bradshaw. The complaint is in the usual form of an action to quiet title to property alleged to be subjected to an adverse claim by the defendant. The plaintiffs carved out of the original homestead tract all the tract of land delineated on Bradshaw's subdivision recorded in the manner above referred to which had not prior to the commencement of the action been sold by Bradshaw to other individuals. They are claiming, therefore, all the lots of land appearing upon this subdivision which were held in the possession of Bradshaw at the time of his death, but omit from their pleading all reference to those lots of land which he had sold prior to the commencement of the action, as well as the

entire strip of land known as Third street, which he had dedicated to the use of the public upon the filing of his map in 1909. The trial court granted the plaintiffs all the relief they asked for, excepting lot 13 in block 1, a tract of land which is described upon this map as approximately 54 feet by 115. This lot was awarded to the defendant upon the theory that the old home building having been located on that particular lot the defendant was entitled thereto through adverse possession, it appearing that he, or his mother preceding him, had lived in the premises since the death of John M. Patchett in 1876, a period of about forty-six years.

"The plaintiffs' claim is based upon the theory that they are the successors to the remaindermen, under the will of John M. Patchett, to the entire estate; that though the property is claimed by them as devisees under the will, in accordance with section 1265, Civil Code, they insist that the homestead did not become a part of the estate of John M. Patchett, and that they are accordingly not bound by the judgment in *Patchett* v. *Bradshaw*, which awarded the property to the predecessor of the defendant herein. It is the defendant's contention that the homestead did not vest in the predecessors of the plaintiff, but that it became a part of his estate; that the plaintiffs are therefore estopped by the judgment in *Patchett* v. *Bradshaw*; that the defendant and his predecessor in interest have acquired title to all the lands by adverse possession, and that the devise in the will of John M. Patchett, purporting to grant a life estate only to Martha, is invalid to that extent and in fact constituted a devise of the entire estate to her. The trial court followed plaintiffs' theory of the case to the full extent urged by them excepting as to the one small lot upon which the home was located, and as to that the court found that Bradshaw had acquired title thereto by prescription. Judgment was entered accordingly awarding all the property in suit to the plaintiffs other than lot 13, which was awarded to the defendant. The defendant has appealed from all that portion of the judgment adverse to him.

[1] "On this appeal the principal question involved is the construction of the homestead laws as they existed at the time of the death of John M. Patchett, in 1876. A reference to the codes as they stood at that time discloses a slight inconsistency in wording, but a very vital difference in effect,

between sections 1265, Civil Code, and 1474, Code of Civil Procedure. Both of these sections were amended by the legislature in 1874. The amendment to section 1474, Code of Civil Procedure, was approved on March 24, 1874 (Code Amdts. 1873-74, p. 362), while the amendment to the Civil Code section was approved on March 30th (Code Amdts. 1873-74, p. 231), of the same year. The Civil Code section · must, therefore, be regarded as the latest expression of the legislative will and the one which controls the matter of the devolution of homesteads existing at that period. (*Weinreich* v. *Hensley,* 121 Cal. 647 [54 Pac. 254]; *Estate of McGee,* 154 Cal. 204, 206 [97 Pac. 299].)

"In order to avoid confusion in the history of this legislation it should be said that the foregoing cases involved a similar situation which arose in the amendment of these two code sections by the legislature of 1880, with, however, a reversal of the situation as to time, that is to say, the amendment to the Civil Code section was approved prior to the approval of the amendment to the section of the Code of Civil Procedure, and it was held in those cases that section 1474, Code of Civil Procedure, controlled over the Civil Code section.

[2] "All parties agree that, in accordance with the former rulings of the Supreme Court, section 1265, Civil Code, as amended in 1874, that being the law which existed at the time of the death of the homesteader, controls the devolution of this particular homestead. That section, after making provision for the disposition of homesteads selected from community property, provided that 'in other cases, upon the death of the person whose property was selected as a homestead, the property shall *go* to his heirs *or* devisees, subject to the power of the probate court to assign the same for a limited period to the family of the decedent.' The provisions of section 1474, Code of Civil Procedure, as amended at the same session, were almost identical with the Civil Code section with this important exception—that in the case of a homestead selected by the owner of separate property the section declared that it 'vests . . . in his or her *heirs.*' [3] It will be seen, therefore, that the main distinction between the sections as they read at that time was that the Civil Code section carried the homestead selected from separate property over to the heirs *or devisees,* whereas the

section of the Code of Civil Procedure carried it to the heirs only. As said in *Estate of McGee,* 154 Cal. 204, 205 [97 Pac. 299]: 'The word "heirs" cannot be construed to include "devisees," and section 1474 therefore operates, as was said in construing similar language in section 1468, Code of Civil Procedure, "To vest the title to the homestead in the heirs at law, and so to withdraw it from the disposition made by the testator under his will."' This, it must be recalled, was said in construing a case which came to the Supreme Court under the code sections as amended in 1880, when 1474 was held to be controlling over 1265. We, however, are confronted with a directly opposite situation, and must find that the Civil Code section which provides for the devolution to 'heirs or devisees' is controlling, and that accordingly, under the homestead laws as they existed in 1876, it permitted one who had selected a homestead from his own separate property to dispose of it by will. This conclusion necessarily follows from the use of the words 'or devisees' in the code section, as otherwise those words would have no meaning at all. In fact the proposition is conceded by all parties to this litigation, the point of difference between them being whether the homestead became a part of the estate of John M. Patchett, the respondents claiming that it went to them as devisees under the will without administration. [4] It would seem evident that if property is by law made subject to the testamentary disposition of the owner it becomes a part of his estate and must be administered on in probate in the ordinary way. On the other hand, where the law declares that certain property shall on the death of one party vest in another—shall vest in the survivor or in the heirs of the deceased—the rule is that such property goes directly to the person designated without administration and that it is accordingly not a part of the estate of the decedent.

[5] "It follows from this that if the property is subject to the testamentary disposition of the owner and thus becomes a part of his estate the administrator of his estate is permitted to sue or be sued concerning the property without joining the heirs in such litigation, and that any judgment in which the administrator is a party is equally binding on all the heirs and on all persons claiming under such administrator. This proposition is conceded by the respond-

ents. If, therefore, we are correct in holding that, by reason of the language of section 1265, Civil Code, the homestead became a part of the estate of John M. Patchett, it must necessarily follow that the judgment and decree rendered in the suit of Charles H. Patchett, as administrator of that estate, against Bradshaw, in which it was decreed, following the stipulation of the parties thereto, that the administrator had no claim or interest in this homestead property, is binding upon him as such administrator and upon all the heirs of that estate who are the plaintiffs and respondents in this action.

"Respondents have cited a number of cases holding that the homestead vests absolutely in the survivor or in the heirs, as the case may be, and that it does not become a part of the estate subject to administration. All these cases, however, involved an interpretation of a statute which expressly declared that the homestead should, upon death, vest either in the survivor or in the heirs. None of these cases involved an interpretation of section 1265, Civil Code, as it stood between the period of its amendment in 1874 and the amendment in 1880, during which time it was the controlling statute and during which time the statutory law was that in a case of separate property selected by the owner the homestead should, on the death of its creator, go to his heirs or devisees.

[6] "Therefore, in the action instituted by Charles H. Patchett, as administrator of the estate of John M. Patchett, to recover the property which was alleged to have been unlawfully seized and held by Martha Patchett and her executor, the issue was raised as to the validity of this will and particularly as to that portion of the will which related to the disposition of this homestead property. Growing out of this issue were the questions whether the will was valid in its attempt to devise the homestead property to the widow for the period of her life only, with the remainder over to certain designated heirs, or whether the will was entirely ineffectual in its attempt to devise any interest in the homestead property. The further issue arose in that particular litigation as to whether the attempt of the testator to give a life esate in the homestead to the widow (assuming the power of testamentary disposition) was ineffectual because of the peculiar wording of the will, from which the defend-

198 Cal.—29

ant and appellant here argues that the widow was in fact given the power by the will to defeat the entire remainder and that she therefore took an estate in fee and not a life estate.

"With these issues before them the parties stipulated that the decree should be entered awarding the entire homestead to the defendant therein as the successor in interest of the widow. As consideration for this the defendant therein waived all claim to all the other lands involved in that litigation and these were accordingly awarded to the plaintiff, It may be that if these issues had gone to trial and the court had held that the widow took the entire estate through the right of survivorship, to the exclusion of the other heirs, such holding would have been erroneous. Nevertheless, the issue as to the ownership of the homestead property covered a subject matter over which the trial court had jurisdiction, and, all the necessary parties having been present, the decree of the trial court, even though we may concede it to have been erroneous as a matter of law, was nevertheless a decree executed within the jurisdiction of the court, and is binding upon all the parties thereto. The respondents are in this peculiar position: If they take under the will as a part of the estate they are bound by the judgment; if they 'succeed as heirs' they would be entitled to a portion of the estate only as Martha Patchett, the widow, was an 'heir' also. Under this theory she would be entitled to her share under section 1386, Civil Code, free from any limitation as to a life estate under the will, and to this share the appellant herein would succeed. Thus the judgment as rendered could not stand under either theory.

"In addition to this the appellant specially pleaded as a separate defense the provisions of section 318, Code of Civil Procedure, which provide that no action for the recovery of real property or of the possession thereof can be maintained unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the property in question within five years before the commencement of the action, and further pleaded that ever since the first day of November, 1909, and until his death, in 1922, Benjamin Bradshaw was in the quiet and peaceful possession of the land described in the complaint, holding the same adversely to all other parties, and that no claim had been made

thereto in that period on the part of the plaintiffs. Some criticism is made as to the character of the pleading as being insufficient to raise the issue of adverse possession in the appellant, but we do not deem these criticisms important in view of the rule announced in *Alhambra etc. Co. v. Richardson*, 72 Cal. 598, 601 [14 Pac. 379, 381], where it is said: [7] 'So far as the title to real property is concerned, prescription and limitation are convertible terms; and a plea of the proper statute of limitations is a good plea of a prescriptive right.' The evidence showed without conflict that, outside of the claim appearing in the complaint in *Patchett v. Bradshaw*, none of the respondents, either directly or indirectly, asserted any claim of title to any of the property in suit at any time during the period of forty-six years when it was held by the appellant and his predecessor. All the evidence showed without conflict that since the entry into possession in his own right by Benjamin Bradshaw he had paid all the taxes on the entire tract other than the lots which he had sold to others, had dedicated a street cutting the tract in two, had paid for the improvements upon that street, as well as the others surrounding the entire tract, and had at all times exercised all necessary evidences of ownership over the entire tract while it was in his possession. The only answer to this showing of uninterrupted possession on the part of the appellant is that, by reason of the subdivision of the premises into lots in 1909, the exception found in section 322, Code of Civil Procedure, 'when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract,' should be invoked to defeat the appellant's claim to adverse possession of the entire tract. [8] The difficulty with respondents' position on this phase of the case is that they have overlooked the well-known rule that in actions of this nature a party must prevail upon the strength of his own title and not upon the weakness of another's. It was incumbent upon the respondents to show that they or their ancestors had been seized or possessed of the property within five years before the commencement of the action. (*Akley v. Bassett*, 189 Cal. 625, 646 [209 Pac. 576]), and this they failed to do.

[9] "There is evidence in the record showing without dispute appellant's entry into possession of the entire tract

on October 4, 1904, and this accords with the finding of the trial court to that extent. This finding is not subject to attack on this appeal. There is no evidence tending to show a change of possession since that time. It is, therefore, a case for the application of the presumption that a thing once proved to exist continues as long as is usual with things of that nature.

[10] "We cannot escape the conclusion that irrespective of the manner of pleading the issue of adverse possession the trial of the issue was fairly had before the lower court and that the error of the court consists in its adoption of respondents' theory that because the occupant of the premises subdivided them into lots he thereby lost the right to claim a prescriptive title to the entire tract because of section 322, Code of Civil Procedure. Without a particle of conflict the evidence shows that the respondents and their predecessors, for a period of forty-six years, at least, had not been in possession of the premises, while during that whole period the appellant and his predecessor had been in actual and peaceable possession exercising all the acts of ownership which an ordinary person would have done under like circumstances. For these reasons the respondents were barred by the statute of limitations, mentioned in section 318, Code of Civil Procedure, as pointed out in *Beckett* v. *City of Petaluma,* 171 Cal. 309, 312 [153 Pac. 20].

" . . . For these reasons we conclude that the portion of the judgment adverse to the appellant and from which he appeals should be reversed with directions to the trial court to retry the issues relating to the property described in the complaint other than lot 13 of block 1 thereof."

Judgment is reversed.

Seawell, J., Richards, J., Shenk, J., Lawlor, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.