[Civ. No. 24816.   Second Dist., Div. One.   Nov. 15, 1960.]

Estate of WILLIAM STEVENS HEIGHO, Deceased. ROBERT J. BIERSCHBACH, Appellant, v. BARBARA B. HEIGHO, Respondent.

Surr & Hellyer and John B. Surr for Appellant.

Larwill & Wolfe and George R. Larwill for Respondent.

LILLIE, J.—William Stevens Heigho died on December 9, 1956, leaving property in the county of Los Angeles where his estate was administered by his wife, Barbara, as executrix. On October 2, 1958, final distribution was ordered; the decree included an "omnibus clause" distributing all property whether described therein or not. Mrs. Heigho was discharged as executrix on October 31, 1958. Fourteen months later

(December 29, 1959) Robert J. Bierschbach, a partner in the law firm of Surr and Hellyer and on behalf of Forrest M. Laidley and George P. Vye, petitioned the court to reopen probate proceedings and for the issuance to him of letters of administration (with will annexed) under the claimed authority of section 1067 of the Probate Code,[1] Mrs. Heigho filed written objections, the petition was denied and Bierschbach has appealed.

Upon the hearing below it was stipulated that no additional evidence would be taken since all of the facts necessary for decision were contained in the petition, the supporting declarations of Laidley and Vye, the written opposition of the objector, and pertinent papers in the estate proceedings sought to be reopened. The chronology of certain material facts, all undisputed, is as follows:

*February 5, 1957*: Will admitted to probate; Mrs. Heigho appointed executrix.

*February 7, 1957*: First publication of notice to creditors.

*May 1, 1957*: Inventory and appraisement filed ($28,-452.79).

*April 24, 1958*: Claim of Laidley and Vye for $117,992.50 filed, being an alleged indebtedness arising in 1950 on an oral contract for commissions due on the sale of corporate stock.[2]

*May 5, 1958*: Claim rejected by executrix, notice thereof being mailed to claimants in care of certain Chicago (Illinois) attorneys and in care of Surr & Hellyer (San Bernardino).

*May 29, 1958*: Order for family allowance ($750 per month) to Mrs. Heigho for 12 months, retroactive to December 9, 1956.

*September 8, 1958*: Report of inheritance tax appraiser filed, listing all estate assets and, in addition, all assets (fully describing them) in a certain trust created by Mr. Heigho in favor of Mrs. Heigho and a son, in the total sum of $423,-902.99. Inheritance and transfer taxes due on the interests passing were also set forth.

---

[1] 'The final settlement of an estate, as in this chapter provided, shall not prevent a subsequent issue of letters testamentary or of administration, or of administration with the will annexed, if other property of the estate is discovered, or if it becomes necessary or proper for any cause that letters should be again issued.'

[2] An action on this indebtedness was instituted against Mr. Heigho, prior to his death, in the Superior Court at San Bernardino; a similar action had previously been filed in the United States District Court at Detroit, Michigan. In neither action was service obtained upon the decedent.

*September 9, 1958*: First and final account and petition for distribution filed and notices given thereon; among the recitals in the account was one concerning the filing and rejection of the Laidley-Vye claim and the further recital that no suit based thereon had been instituted within the statutory period of three months (Prob. Code, § 714).

*October 2, 1958*: Final account approved and distribution ordered as prayed for therein, including distribution of "all other property of said estate whether described herein or not."

*October 6, 1958*: Final decree entered in judgment book.[3]

*October 31, 1958*: All federal estate, state inheritance taxes, debts and expenses having been paid, distribution made and receipts and vouchers filed (all as alleged in her affidavit on file), executrix discharged.

*December 29, 1959*: Petition of Bierschbach to reopen filed.

The petition to reopen made reference to the San Bernardino action (footnote 2, *supra*) and an assignment to claimants Laidley and Vye of the plaintiffs' interest therein; it therein alleged that Laidley and Vye had no notice of Mr. Heigho's death until November 19, 1957, and no notice of the pendency of the estate proceeding in Los Angeles until on or about April 7, 1958, that they filed their claims and the same were rejected, that the inventory and appraisement filed in the estate showed a total value of $28,452.79, without mention therein of a trust established at Farmers and Merchants Bank, Los Angeles, by decedent prior to his death, and that the petition for family allowance, alleging she was without adequate estate of her own, asked for a monthly payment to Mrs. Heigho of $750, retroactive to December of 1956. Reference is then made in appellant's petition to the report of the inheritance tax appraiser, filed September 8, 1958, but dated April 24, 1958, showing the establishment of the trust and its taxability under provisions of the Revenue and Taxation Code; in that connection, the supporting declarations of Laidley and Vye declare that "as a result of executrix's failure to file the report of the inheritance tax appraiser until September 8, 1958, said Laidley and Vye were not aware of the existence of assets of the decedent in excess of the amount set forth in said inventory and appraisement, and therefore did not take the necessary action to substitute executrix as defendant in the San Bernardino action." The petition con-

---

[3]No appeal was ever taken from said decree as authorized by section 1240 of the Probate Code, nor were any proceedings taken thereafter under section 473, Code of Civil Procedure.

cluded with an allegation that Mrs. Heigho has refused to reopen the estate "in order that the personal representative of the estate may be made a party in the action pending in San Bernardino County."

As heretofore mentioned, the statute in pertinent part provides that probate proceedings may be reopened "if other property of the estate is discovered, or if it becomes necessary or proper for any cause that letters should be again issued." (Prob. Code, § 1067.) In a "Memorandum to Counsel" denying the petition, the trial court concluded that it would not be "proper" to reopen the estate under the circumstances appearing, principally, the claimants' "dilatoriness" in prosecuting their claim—thus, the San Bernardino suit was filed in March of 1954, although the cause of action (on an oral contract) is said to have arisen in December of 1950, the decedent died in December of 1956, and there was no showing that service could not have been made in this state prior to his death, no request for special notice (Prob. Code, § 1202) was ever filed, and no attempt was made to substitute the executrix in the San Bernardino action. Other considerations controlling the determination of the court below are as follows: (1) If either the Detroit or San Bernardino action had been prosecuted to judgment during decedent's lifetime, the executrix could have claimed deductions with respect to federal estate and state inheritance taxes; and if she had been substituted as a defendant, payment of these taxes could have been deferred until the outcome of the litigation; and (2) due to the lapse of time since the date of the alleged oral contract, it might be impossible for the objector-executrix to obtain testimony in aid of her defense of the action thereon.

Appellant urges that the petition should have been granted on one or both of the grounds specified in the statute, namely, (1) the discovery of other property, and (2) a showing of good cause for subsequent administration. We are not persuaded that either contention has merit.

It has been said that the court "should ordinarily proceed with considerable caution before declaring the necessity of reopening that which has apparently been completed and closed." (*Estate of Den,* 3 Cal.2d 638, 641 [45 P.2d 963].) By the very term of section 1067, the "other property" discovered must be "of the estate." Section 600 of the Probate Code enjoins the personal representative to inventory (within the time therein prescribed) "the estate of the decedent" which has come into his (or her) possession or knowledge. "Property which the decedent in his lifetime

transferred by valid conveyance is no longer a part of his estate, and consequently does not figure in the probate proceedings. [Citations.]'' (20 Cal.Jur.2d, Executors and Administrators, § 435, p. 636.) ▮ Conversely, anything disposable by will is property and must be administered in probate in the ordinary way. (*Patchett* v. *Webber*, 198 Cal. 440, 448 [245 P. 422].) ▮ It is undisputed that the trust created by decedent was a revocable one; established in 1951 (subsequent to the will admitted to probate), it remained unrevoked upon his death and the property contained therein could not have been the subject of testamentary disposition, absent such revocation. It is now argued, however, that the trust was established in fraud of creditors and caused ''a deficiency of assets in the hands of the executor or administrator'' (Prob. Code, § 579) ; thus, it is said to have been a transfer without consideration (being taxed as such under Rev. & Tax. Code, § 13641) and hence revocable by the representative for the benefit of creditors, or by the creditor himself, where the representative is the fraudulent transferee. (21 Cal.Jur.2d, Executors and Administrators, §§ 1025 et seq.)

In *Webb* v. *Pillsbury*, 23 Cal.2d 324, 328 [144 P.2d 1, 150 A.L.R. 504] it is declared: ''Section 579 of the Probate Code recognizes that the right to recover property conveyed by a decedent in fraud of creditors is an asset of his insolvent estate and that the executor or administrator is a trustee thereof for the benefit of creditors. The primary object of the statute is to enable the trustee to reduce that asset to possession and administer it for the benefit of creditors under the direction and supervision of the probate court.'' But appellant has not proceeded under section 579; and although he argues that the petition (to reopen) raises the issue of fraudulent concealment by the executrix-transferee, there is no allegation that the transferor-decedent was, at the time of the conveyance, insolvent or that the conveyance rendered him so. ''In order to establish a fraudulent conveyance under this section [Civ. Code, § 3439.04],[4] three things or elements must be pleaded and proved :—first, there must be a conveyance or the creation

---

[4] ''Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.'' In *Goldstein* v. *Prien*, 143 Cal.App.2d 123, 127 [299 P.2d 344], it was said that ''Section 579 treats a conveyance 'that by law is void as against creditors' in exactly the same manner as a fraudulent conveyance.''

of an obligation; second, the transferor must be, at the time of the conveyance, insolvent or the conveyance must render him insolvent; third, the conveyance must have been made, or the obligation incurred, without a fair consideration." (*Tokar* v. *Redman,* 138 Cal.App.2d 350, 353-354 [291 P.2d 987].)

Nor would the evidence, as we see it, justify a conclusion that respondent fraudulently concealed the existence of the trust—and thus breached the duty of full disclosure, as appellant claims, to every class of creditor, including Laidley and Vye. Upon request of respondent, and pursuant to rule 10(b), Rules on Appeal, the probate file has been transmitted to this court; therein we note that on *August 22, 1957,* there was filed with the clerk the claim of the law firm of Larwill & Wolfe in the sum of $6,010 less $1,000 theretofore paid; the claim bears the approval of the probate commissioner, dated *August 22, 1957,* and the approval of the executrix, dated *August 7, 1957.* The itemization refers to professional services rendered as well as this statement immediately following: "This is exclusive of the work done in connection with the stock of Calvert Lithographing Company, *which is an asset of the William S. Heigho Trust with the Farmers and Merchants Office of the Security-First National Bank, Los Angeles, California."* It is admitted that Laidley and Vye had notice of the estate proceeding on or about April 7, 1958; counselled at all times by attorneys, even a cursory examination of the probate file or some inquiry commensurate with the size of their claim would have supplied the claimants with the information now said to have been fraudulently withheld for more than 12 months when the report of the inheritance tax appraiser was filed in September of 1958. Mrs. Heigho's application for a family allowance becomes somewhat unimportant when consideration is given to the facts just mentioned.

Interestingly enough, also, the two affidavits (by Laidley and Vye respectively) supporting the claim filed on April 24, 1958, make reference to the absence of each claimant from this state at the time of Heigho's death and, therefore, it is to be assumed, the absence of notice of the pending probate proceeding "by reason of being out of the State of California at the time of such death. . . ."; such an allegation, however, does not bring either claimant within the exception (to filing within the prescribed time) provided by section 707 of the Probate Code which refers to absence from the state *during the publication of notice to creditors* and *not at the time of decedent's death.* (See *MacGowan* v. *Jones,* 142 Cal. 593 [76 P. 503].)

If for no other reason, therefore, the claim was properly rejected; indeed, an executor is without power to waive *due* presentation of a claim which the statute declares must be presented. (*Hurlimann* v. *Bank of America,* 141 Cal.App.2d 801, 806 [297 P.2d 682].)

Appellant points to *Radar* v. *Rogers,* 49 Cal.2d 243 [317 P.2d 17] as excusing the failure here to comply with the provisions of section 714, Probate Code, providing that if suit on a rejected claim (the claim, as the instant one, then being due) is not brought within three months after the date of service of rejection, the claim shall be forever barred; the same decision is also said to excuse noncompliance with section 709, Probate Code, requiring a claimant (who has a lawsuit pending) to present it "in like manner" as other claims. In the Radar case, an action was filed against Doe as administratrix of a named decedent's estate but before said estate was opened; an administratrix having been later appointed, plaintiffs presented their claim within the time allowed by law; upon its rejection but more than three months after service of notice thereof, plaintiffs amended their complaint to allege presentation and rejection of their claim; also, the administratrix was named in the amended pleading and she was served with process. Judgment of dismissal, based on the ground that noncompliance with section 714 barred the action, was reversed. The Supreme Court observed that there had been substantial compliance with the governing statute in that plaintiffs had at least been diligent in the filing of their complaint (albeit prematurely), and that no substantial rights of the estates were affected. In our case, however, there does not appear to be the sort of diligence contemplated by *Radar*; no attempt was ever made to substitute the executrix in any action previously filed, the estate was voluntarily permitted to be closed and the claim in question adjudicated by the decree of final distribution; as stated by respondent, respecting compliance with section 714, "We have no compliance or attempt to comply." It cannot be said that *Gregory* v. *Clabrough's Executors,* 129 Cal. 475 [62 P. 72], cited in *Radar,* supports the extreme rule impliedly contended for by appellant, namely, that where an action is already pending at the time of the claim's presentation, the claimant (following rejection) may wait one year, two years or longer to take additional affirmative action which will be dispositive thereof and result in eventual termination of the probate proceeding. It is the public policy of this state that there be an

efficient administration and prompt settlement of estates not only for the sake of creditors but also for the benefit of heirs and beneficiaries.

Summing up this phase of the appeal, it is settled that the administration of the estates of deceased persons is purely statutory, and the procedure outlined in the statutes is therefore controlling. (*Perry* v. *Superior Court*, 29 Cal. App.2d 114, 116 [84 P.2d 250].) For any court to order subsequent administration as authorized by section 1067, *supra*, the property must be ''after discovered'' or ''newly discovered''; under the circumstances mentioned, the Heigho trust falls in neither category. Appellant's reply brief concedes that ''most of the cases deal with a situation of after discovered or newly discovered property.'' In *O'Brien* v. *Nelson*, 164 Cal. 573 [129 P. 985], the court pointed out that further or subsequent letters should not be issued ''unless there still remains property of the estate not fully disposed of, or some act to be done relating thereto which only an administrator can do.'' (P. 575.) Assuming then, for argument's sake, that the trust was in fact an asset of the estate, the final decree (from which no appeal was ever taken) includes an omnibus clause distributing ''all other property of said estate whether described therein or not.'' The effect of such an omnibus clause is stated in 21 Cal.Jur.2d 230, section 838, as follows:

''Although the decree of distribution must describe property being distributed, a provision distributing '*all other property belonging to said estate, whether described herein or not,*' and also '*all the residue of the property of said estate,*' vests in the distributees whatever title the decedent had in property not otherwise distributed. Similarly, a decree that provides that any property not known or discovered at the time of the decree, but belonging to the estate, is distributed to a designated person is sufficient to pass title to whatever interest remained in the decedent at the time of his death in property conveyed in his lifetime for charitable purposes. *An omnibus clause indicates the Court's intention to distribute the entire residue of the estate, though the petition for distribution does not specifically describe* certain property.'' (Emphasis ours.)

It follows, still indulging the previous assumption, that there is presently no property whatsoever in the Heigho estate ''not fully disposed of, or some act to be done relating thereto

which only an administrator can do." (*O'Brien* v. *Nelson, supra.*)

Appellant's second and final contention challenges the reasoning adopted by the court below in denying the petition on the ground of claimants' "dilatoriness" which, of course, was the basis for the conclusion that it would be neither "necessary" nor "proper" to order subsequent administration as prayed for. The function of probate court, says appellant, was not to determine the merits of the San Bernardino action, particularly the propriety of dismissing the suit for delay in service of summons and for failure to prosecute; in short, while sitting in probate the court has no general equitable jurisdiction. (Citing *Estate of Reade,* 31 Cal.2d 669, 672 [191 P.2d 745].) As the Reade case points out, however, the probate court "does have the power to apply equitable principles in aid of its functions as a probate court" (p. 672); the power is referred to as "incidental," investing the probate court with "incidental jurisdiction where necessary to carry out its express powers" in matters over which it has jurisdiction. (Witkin, Summary of California Law (7th ed.), pp. 3172-3173.) Having jurisdiction over this proceeding, instituted as it was under section 1067 of the Probate Code, the court properly had the right to inquire whether it would comport with equitable principles to grant the prayer of the petition under all the circumstances appearing. Equitable estoppel forbids a party to show the existence of a fact when by his past conduct it would work an injustice to his adversary to permit him to do so; closely related to the foregoing equitable principle is the maxim that "The law helps the vigilant, before those who sleep on their rights." (Civ. Code, § 3527.) What does the record disclose? Laidley and Vye, for whom this appeal is really prosecuted, failed to file suit on their rejected claim; they failed to substitute the executrix and serve her with summons in the San Bernardino action; they failed to appeal from the final decree of distribution; they failed to proceed under section 473 of the Code of Civil Procedure. The injustice to their adversary becomes immediately manifest. Would it be "proper" to resuscitate an action on an oral contract made ten years previously during which period of time the memories of witnesses (if still living) are permitted to grow dim? And to what dates would the time for the filing of final accounts and distribution, as well as payment of inheritance and federal estate taxes, be extended? Three

years? Five years? Ten years? This is not equity; rather it would be a perversion of equity, and contrary to the legislative purpose of section 1067, to permit the estate of this decedent to be reopened. The decision of the court below was correct and should be sustained.

The order appealed from is affirmed.

Wood, P. J., and Fourt, J., concurred.