46 Cal.Rptr.3d 289 (2006)
141 Cal.App.4th 797
ESTATE OF Foad DEHGANI-FARD, Deceased.
Wells Fargo Bank, N.A. as Executor, etc., Petitioner and Respondent,
v.
Craig Schauer, as Trustee, etc., et al., Objectors and Respondents;
The Regents of the University of California, Claimant and Appellant.
No. B184461.
Court of Appeal of California, Second District, Division Four.
July 24, 2006.
Holland & Knight; Luce Forward, Hamilton & Scripps, John T. Rogers, Jr., Nelson J. Handy, Los Angeles, and Stacie Polashuk Nelson, for Claimant and Appellant.
No appearance for Petitioner and Respondent and for Objectors and Respondents Jacob Dehgani and Farhah Moallem.
Morris & Associates, James G. Morris and Phunphilas Viravan, Sherman Oaks, *290 for Objector and Respondent Craig Schauer.
EPSTEIN, P.J.
The Regents of the University of California challenges the order of the Probate Court allocating to the University of California, Los Angeles (UCLA) a portion of the liability for income tax, and interest on unpaid income tax, paid by the Estate of Foad Dehgani Fard on after-discovered assets.[1] Appellant claims that it should not be liable for any portion of the income tax liability because as an educational institution, UCLA is a charitable organization exempt from income taxation on its share of the assets, and that in its tax returns, the estate claimed and received a partial exemption based on UCLA's charitable status. We agree, and reverse the order.

FACTUAL AND PROCEDURAL SUMMARY
Foad Dehgani-Fard died in 1990, leaving an estate in excess of $1,000,000. Following a will dispute, a settlement was reached establishing four residuary beneficiaries. Under this settlement, decedent's wife would receive 50 percent of the estate, UCLA would receive 37.5 percent, and two relatives would receive 6.25 percent each. An order settling the account was entered in November 1993 (the 1993 order). It provided for distribution of any after-discovered assets in the same percentages: "Any other property of the estate not now known or discovered that may belong to the estate or which the decedent or the estate may have any interest shall be distributed as follows: [¶] 1. 50% to the widow, Rose Marie Dehgani. [¶] 2. 37 1/2% to UCLA. [¶] 3. 12 1/2% to Jacob Dehgani and Farhah Moallem, to be divided equally among them."
In 2001, a Swiss bank account belonging to decedent was discovered. The account was in the name of Boaz Degani, rather than Foad Dehgani-Fard. In order to recover this estate asset, Wells Fargo (successor in interest to the original executor, First Interstate Bank) petitioned for appointment as successor executor, and for an order to continue administration of the probate proceeding.[2] No objections were filed, and the petition was granted in December 2002.
After its appointment, Wells Fargo conducted an investigation and eventually discovered additional assets totaling approximately $11,000,000. As Wells Fargo recovered these after-discovered assets, it filed supplemental inventories and appraisals reporting their value. Decedent's widow filed a petition for family allowance in July 2003; the petition was granted in September 2003. She died in October, and her interest was assigned to the Rose Marie Dehgani 2002 Trust, of which Craig Schauer is the trustee.
Wells Fargo filed income tax returns for income the estate received on the after-discovered assets in the years following the 1993 order. In those returns, Wells Fargo claimed a charitable income tax deduction for the 37.5 percent interest of the *291 estate's income attributable to UCLA's share of the estate.[3]
In its first and final account for the continued probate, Wells Fargo proposed that UCLA receive any distributions free of income taxes, and that the non-charitable beneficiaries pay a proportionate share of such taxes. Schauer, on behalf of the Rose Marie Dehgani 2002 Trust, objected to this apportionment of income tax liability. He argued that UCLA should bear a proportionate 37.5 percent share of the income tax due on the income from the after-discovered assets, and a similar share of the interest due on the unpaid income taxes. The estates of Jacob Dehgani and Farhah Moallem joined in the objections. Wells Fargo filed a supplement to the final account, and UCLA filed a response to the objections.
At a hearing on the final account on December 17, 2004, the parties stipulated to payment of expenses and fees and preliminary distribution of the estate, with $650,000 to be held in reserve pending resolution of the contested issue regarding UCLA's obligation for income tax and interest on the unpaid income tax. The matter was continued for supplemental briefing.
At the hearing on February 4, 2005, the court sustained Schauer's objections with regard to the allocation of tax liability to UCLA, and ordered the income tax expenses allocated over the entire estate, instead of only on the non-charitable beneficiaries' share of the estate. The Regents appeals from the order settling the final account.

DISCUSSION
The income tax and interest on unpaid tax on the after-discovered money has been paid in full, and there is no issue presented about the amounts paid. The only issue is whether UCLA, as a charitable institution, should bear any responsibility for those taxes. The federal government concerns itself only with having the tax paid; state law governs the distribution of the estate and the ultimate impact of the tax. (Riggs v. Del Drago (1942) 317 U.S. 95, 98, 63 S.Ct. 109, 87 L.Ed. 106.)
Respondent Schauer asserted, and the probate court agreed, that UCLA and the three noncharitable beneficiaries were residuary beneficiaries with respect to the after-discovered assets. The probate court then applied the basic statutes related to distribution of the residue: that the residue includes what is left over after payment of specific and general gifts (Prob.Code, § 21117, subd. (f))[4] and after payment of the debts of the estate (§ 11420); and that debts include administrative expenses (§ 11401, subd. (b)) and charges against the estate including taxes, expenses of last illness, and family allowance (§ 11401, subd. (c).) Under this approach, the court held that the beneficiaries were entitled to their respective percentages of the remainder of the estate after the payment of all obligations, including income tax and interest on income tax.
We agree that the after-discovered property constitutes a residuary gift. "A residuary gift is a transfer of property that remains after all specific and general gifts have been satisfied." (§ 21117, subd (f).) The final paragraph of the 1993 order, the "omnibus clause" which we have quoted, provided for the disposition of unknown or undiscovered estate property in the same *292 percentages as provided for known property subject to a residuary distribution: 50 percent to the widow, Rose Marie Dehgani; 37.5 percent to UCLA; and 12.5 percent to be divided equally between Jacob Dehgani and Farhah Moallem. In plain terms, this clause provides that any other estate property that is discovered shall be distributed among these four beneficiaries. It is a transfer of any property that may remain after all the known property is distributed. This is properly categorized as residue of the estate.
Section 11642 addresses the distribution of assets of the decedent discovered after the order for final distribution: "Any property acquired or discovered after the court order for final distribution is made shall be distributed in the following manner: [¶] (a) If the order disposes of the property, distribution shall be made in the manner provided in the order. The court may, in an appropriate case, require a supplemental account and make further instructions relating to the property." The omnibus clause in the 1993 order disposed of the after-discovered property, within the meaning of section 11642. Because of the complexity of recovering the money from the Swiss bank, the court exercised its authority under section 11642 to continue the probate and appoint Wells Fargo as estate representative. UCLA did not object to this procedure, and has borne its share of the costs of the continued administration of the estate.
On behalf of the estate, Wells Fargo was obligated to pay tax on income generated by the after-discovered property for the years 1994 to 2004. Since UCLA is an exempt educational institution, the estate was entitled to deduct the amount of income which was permanently set aside for its exclusive use from the gross income of the estate. (26 U.S.C. § 642, subd. (c)(2).) Wells Fargo sought, and obtained, that exemption; UCLA's share of the income was deducted from the taxable income of the estate. Only the remaining income, which belonged to the shares of the other noncharitable beneficiaries, was subject to income tax and to interest on unpaid income tax. UCLA does not claim payment of income taxes by the estate was improper; its quarrel is with the allocation of the taxes among the beneficiaries.
In its proposed final account, Wells Fargo sought to deduct the income tax obligations from the portions of the estate to be distributed to the noncharitable beneficiaries only. Respondent argued, and the court held, that the taxes and interest paid should be deducted from the after-discovered estate property, and then the shares of all beneficiaries determined from the net estate. As support for this allocation, respondent relies on the explanation in Malmgren v. McColgan (1942) 20 Cal.2d 424, 426, 126 P.2d 616: "Each year the net income of an estate becomes subject to a tax against either the estate or the beneficiaries. As a general rule it is taxable to the beneficiaries only if it is distributed or distributable to them in the taxable year received by the estate." From this, respondent argues that since the income was not distributed to the beneficiaries during the period from 1993 to 2005, the estate, not the beneficiaries, was liable for the income tax.
The Malmgren court was interpreting subdivision (d)(3) of section 12 of the California Personal Income Tax Act (section 12(d)(3)) to determine whether income received by an estate in 1937 was taxable to the estate, or to the legatees. Section 12(d)(3), as amended in 1937, provided: "In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either *293 distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir or beneficiary." From this, the Malmgren court derived a four-part test governing deductibility of income by the estate and its taxability to the legatees: "(1) The income must be received during the administration of the estate; (2) it must be income of the estate for its taxable year; (3) it must be paid or credited to the legatees properly, and (4) during that taxable year."
After a long history of renaming, renumbering, and ultimately repealing the provisions of section 12(d),[5] Revenue and Taxation Code section 17731 now provides that taxation of estates, trusts, beneficiaries, and decedents is to be determined in accordance with applicable provisions of the Internal Revenue Code. The relevant provisions in this case are 26 United States Code sections 661 and 662. In simple terms, section 661 permits an estate to deduct from its taxable income the sum of any amount of income for the taxable year required to be distributed currently, and any other amounts properly paid or credited or required to be distributed for such taxable year. Under section 662, any amount paid, credited, or required to be distributed to a beneficiary under section 661 is included in the gross income of the beneficiary for that taxable year.
These sections and Malmgren address the shifting of income tax obligations from an estate to a beneficiary, based on the distribution or crediting of income to the beneficiary. But that does not reach our questionwhether income tax obligations paid by the estate should be allocated among taxable and tax-exempt beneficiaries in a case where taxes are paid before income is distributed.
In considering this question, it is helpful to recognize the vested nature of the beneficiaries' rights in the after-discovered assets. When a decree of distribution provides for distribution of any other property belonging to an estate, whether described or not, and for the distribution of all the residue of the estate, it vests in the distributees whatever title the decedent had in after-discovered property. (Estate of Heigho (1960) 186 Cal.App.2d 360, 368, 9 Cal. Rptr. 196; Howe v. Brock (1948) 86 Cal. App.2d 271, 275, 194 P.2d 762; see also Broome v. Broome (1951) 104 Cal.App.2d 148, 152, 231 P.2d 171 [although existence of additional estate assets was unknown until several years after the decree of final distribution, one-third interest in the assets passed to each of decedent's three children upon her death under her will and was confirmed to each of them under the decree of final distribution.] ) UCLA's ownership interest in the after-discovered *294 property vested in it under the omnibus clause in the 1993 order.
Thus, from the time of the 1993 order, UCLA was the vested owner of 37.5 percent of the after-discovered property, and of the income that share generated. Had it received the income from its share as its right to it accrued, it would have been responsible for any income tax due on it. (Estate of Bixby (1956) 140 Cal.App.2d 326, 335, 295 P.2d 68.) Since UCLA is a tax-exempt organization, no tax was owed on that income. Wells Fargo sought, and obtained, that exemption; UCLA's share of the income was deducted from the taxable income of the estate. Only the remaining income, which belonged to the shares of the other noncharitable beneficiaries, was subject to income tax and to interest on unpaid income tax.
The account rendered by Wells Fargo showed that the income attributable to UCLA's share of the estate had not been taxed; Wells Fargo proposed to allocate the income tax liability among those beneficiaries whose shares were subject to tax. By allocating the income tax obligations on the remaining portions of the after-discovered assets among all the beneficiaries, the probate court spread the benefit of UCLA's deduction among nonexempt beneficiaries, and burdened UCLA with a share of their income tax liability. This result is contrary to the equitable principle requiring that "the burden of the tax accompanies the income and should be borne by the account into which the taxed item goes." (Estate of Bixby, supra, 140 Cal. App.2d at p. 335, 295 P.2d 68.) It also is out of step with the purpose of the charitable deduction: "[I]n exempting charitable entities from tax liability Congress manifested a purpose to insulate all income contributed to charity from taxation. Taxing income en route to charity while temporarily in the possession of an estate is ... inconsistent with the congressional policy to exempt such income from federal taxation altogether ...." (United California Bank v. United States (1978) 439 U.S. 180, 194, fn. 14, 99 S.Ct. 476, 58 L.Ed.2d 444; italics added.)
UCLA was entitled to the entire benefit of its tax exempt status for the income which flowed to it, and should bear no portion of the income tax attributable to the other beneficiaries. The probate court has the equitable power to insure that one beneficiary does not receive a tax benefit at the expense of another. (See Estate of Bixby, supra, 140 Cal.App.2d at p. 340, 295 P.2d 68; see also § 11642 [court may, in an appropriate case, make further instructions relating to the distribution of after-discovered assets].) In this case, the court abused its discretion in allocating the income tax obligations among all beneficiaries, instead of among the noncharitable beneficiaries only.

DISPOSITION
The order is reversed. UCLA is to have its costs on appeal.
WILLHITE and HASTINGS,[*] JJ., concur.
NOTES
[1] Although UCLA is named as a residuary beneficiary of the estate, The Regents is a constitutional corporation and is the legal entity vested with the legal title and the management and disposition of the property of the university, including the power to receive testamentary gifts and donations and the power to sue and be sued. (Cal. Const., art. 9, § 9, subd. (f).) Hence appellant is The Regents, representing the interest of UCLA. For convenience, we refer to the beneficiary as UCLA.
[2] The probate had not been closed after the 1993 order due to a ministerial matter; hence Wells Fargo petitioned to continue rather than reopen probate.
[3] This was pursuant to a settlement Wells Fargo reached with the Internal Revenue Service.
[4] All statutory references are to the Probate Code unless otherwise indicated.
[5] The text of section 12(d)(3) was incorporated into Revenue and Taxation Code section 18137 in 1945 (Stats.1943, ch. 659, § 1, p. 2390, eff. June 5, 1945), and repealed in 1955 (Stats.1955, ch. 939, § 1, p. 1655, eff. June 6, 1955.) The basic principle that an estate may deduct from taxable income any amount of income properly paid or credited or required to be distributed to a beneficiary was continued in Revenue and Taxation Code section 17761; the corollary that such amount is to be included in the income of the beneficiary was continued in Revenue and Taxation Code section 17762. These two sections were repealed in 1983 (Stats.1983, ch. 488, § 58, eff. July 28, 1983) and California now relies on the relevant provisions of the Internal Revenue Code to govern taxation of estates, trusts, beneficiaries and decedents. (Rev. & Tax. Code, § 17731.)
[*] Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.