[Civ. No. 1067. Fifth Dist. Jan. 28, 1970.]

ROBERT C. JAY, as Administrator, etc.,
Plaintiff, Cross-defendant and Respondent, v.
C. M. DOLLARHIDE et al., Defendants, Cross-complainants
and Appellants.

## COUNSEL

Bartow & Christiansen, Sherwood Green, Denslow Green and Herbert E. Bartow for Defendants, Cross-complainants and Appellants.

Lerrigo, Thuesen & Thompson and C. Richard Walters for Plaintiff, Cross-defendant and Respondent.

## OPINION

**DAVID, J. pro tem.**\*—Robert C. Jay, duly appointed administrator of the estate of Charles H. Maginnis, deceased, brought this action on April 18,

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

1963, to quiet title to 80 acres of land in Madera County, generally described as the North one-half of the Northeast one-quarter of Section 18, Township 5 South, Range 24 East, M.D.B. & M., as the representative of the estate of Charles H. Maginnis and the heirs thereof. Named as defendants were appellants, Madera Timber Company, a Nevada corporation, C. M. Dollarhide, Roy Maggart, Joseph C. Donnerberg, Jr., and Mrs. Ray Karp.

The plaintiff administrator by an authorized supplementary complaint sought treble damages for trespass against C. M. Dollarhide, Madera Timber Company and Turnbar Timber Company, for cutting and taking timber from the realty in question.

The appellants Charles Dollarhide and Madera Timber Company cross-complained against the estate of Charles H. Maginnis and certain of his heirs, namely, Florence M. Maginnis (his second wife), Charles H. Maginnis (his son), and Margaret Szenes-Dugo (a daughter). As against these heirs, appellants purported to secure a default judgment.

Judgment was for plaintiff on the cause of action for quiet title, and treble damages in the sum of $150,000 were awarded plaintiff for trespass and cutting of lumber. The effect of the default judgment was undetermined. This appeal followed.

The pretrial conference order, filed April 1, 1966, stated:

"The issues remaining in dispute are as follows:

"1. Whether or not MADERA TIMBER COMPANY, a Nevada corporation and/or C. M. DOLLARHIDE own said property and are entitled to have a decree quieting title.

"2. Whether or not Plaintiff is the owner of said real property and entitled to have a decree quieting title thereto.

"3. Whether or not Defendants committed trespass upon said real property, and, if so, the amount of compensatory and/or punitive damages, if any, Plaintiff is entitled to recover therefor.

"4. Whether or not Plaintiff is barred from recovery by reason of Defendants' first [Code Civ. Proc., §§ 318, 319, 320] second [Dollarhide an innocent purchaser for value, plaintiff's claim is in bad faith and is estopped], third [plaintiff has not come into court with clean hands], fourth [Marguerite Maginnis is an indispensable party], fifth [Florence M. Maginnis is an indispensable party], or sixth [deed to Maginnis, heirs and assigns is void, since he and Marguerite Maginnis were dead on date of deed of reconveyance from the United States] affirmative defenses, as contained in Defendants' Amendment to Answer.

"5. The effect of the entry of default as against Cross-Defendants FLORENCE M. MAGINNIS, CHARLES H. MAGINNIS and MAGARET SZENES-DUGO, and any judgment by default which may hereafter be entered thereon.

"6. Whether or not the corporate veil of MADERA TIMBER COMPANY should be pierced to subject Defendant C. M. DOLLARHIDE to personal liability for the acts of said corporation.

". . . . . . . . . . . . . . . . . .

"The case is ordered set for Court Trial on July 5, 6, and 7, 1966 at 10:00 A.M., in the Madera County Superior Court."

Notice of time and place of trial was waived. The order was signed by the Honorable Howard C. Green, Judge assigned.

The pretrial order superseded the pleadings and controlled the case. (Cal. Rules of Court, rule 216; *Agricultural Ins. Co.* v. *Smith,* 262 Cal.App.2d 772 [69 Cal.Rptr. 50]; *Lauder* v. *Jobe,* 261 Cal.App.2d 539 [68 Cal.Rptr. 63]; *K. King & G. Shuler Corp.* v. *King,* 259 Cal.App.2d 383 [66 Cal.Rptr. 330]; *California Steel Buildings, Inc.* v. *Transport Indem. Co.,* 242 Cal.App.2d 749 [51 Cal.Rptr. 797]; *Mellone* v. *Lewis,* 233 Cal. App.2d 4, 12 [43 Cal.Rptr. 412].)

Such order is as much a part of the law as any other procedural rule. (*Thompson* v. *Guyer-Hays,* 207 Cal.App.2d 366, 372 [24 Cal.Rptr. 461].)

Charles H. Maginnis died in 1937, his wife, Marguerite, having predeceased him. A second wife, Florence Maginnis, and other heirs survived him. It is undisputed that the decedent, Charles H. Maginnis, acquired clear title to the base land in question by patent and deed dated November 10, 1899, recorded in Madera County on February 12, 1900. On January 31, 1900, he and his wife, Marguerite Maginnis, executed a deed, recorded February 12, 1900, which recited, in part,

". . . That Whereas, It is provided by an Act of Congress of June 4, 1897, as follows: 'That in cases in which a tract covered by an unperfected bona fide claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the Government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent'; AND WHEREAS, I, the undersigned am the owner of a certain tract of land (hereinafter described) included within the limits of the Sierra Forest Reservation in the State of California, which land I desire to relinquish to the United States and select in lieu thereof an equal quantity of vacant land open to settlement; Now, THEREFORE, I, Charles

H. Maginnis and I, Marguerite Maginnis, his wife of St. Louis County, State of Minnesota do hereby release, remise, grant and relinquish to the United States of America; the said land, which is more particularly described as follows: The north half of the northeast quarter of section eighteen (18) in Township five (5) south of range twenty four (24) east Mount Diablo Base and Meridian situated in the County of Madera, State of California and containing 80 acres, and I agree to accept in lieu thereof other lands to be hereafter selected by me or my assigns, equal in area to the tract so relinquished."

On March 3, 1958, the director of the Bureau of Land Management[1] on behalf of the United States by his deed remised, relinquished and quitclaimed to Charles H. and Marguerite Maginnis, their heirs or assigns, "all right, title or interest in or to" the 80-acre tract in question, inuring to the United States on January 31, 1900, by their conveyance recorded in the official records of Madera County on February 12, 1900, and on May 11, 1903. The reconveyance was duly recorded on April 7, 1958. This extinguished all *in lieu* selection rights and reunited the legal and equitable titles. (*Udall* v. *Battle Mountain Co.,* 385 F.2d 90, 93, cert. den. 390 U.S. 957 [19 L.Ed.2d 1151, 88 S.Ct. 1041].)

The trial court found that Charles H. Maginnis owned the land in question as his separate property on the date of his death, and accordingly it awarded the plaintiff administrator a decree quieting title thereto against the appellants. Apart from asserting that there was no trespass because of their alleged ownership, no issue is taken on this appeal by appellants relative to the treble damages awarded for trespass and cutting of timber.

The reconveyance to Maginnis, his heirs and assigns, was pursuant to federal statutes which we will hereinafter consider, including the act of September 22, 1922 (ch. 404, § 1, 42 Stat. 1017, 16 U.S.C.A. § 483, repealed in 1960). This act presupposed that for some reason, not the fault of the grantor, no selection of the *in lieu* lands sought in exchange had been accomplished, making it proper for the United States to reunite the legal and equitable titles, and to clear the record title from the conveyance to the United States.

By the act of March 3, 1905, 33 Statutes 1264, Congress repealed the act of 1897, under which Maginnis had sought to exchange his land for the *in lieu* land. The right to make such exchanges was cut off, saving the rights of those whose selection of *in lieu* land had been rejected or cancelled through no fault of their own.[2]

---

[1] By Order No. 2583 of August 16, 1950, of the Secretary of the Interior, the Director of the Bureau of Land Management was designated to act in such matters.

[2] The statutory history concerning *in lieu* rights originating in the 1897 act is set forth in *Udall* v. *Battle Mountain Co.* (9th Cir. 1967) *supra,* 385 F.2d 90, cert. den.

Through attorneys-in-fact, one of whom was Andrew Christiansen, Maginnis applied for *in lieu* land in 1900, but 40 of the 80 acres sought were unavailable. Not having made a reselection, his application was cancelled in 1906.

Again in 1918, he applied to select *in lieu* acreage in Wyoming and Colorado. These applications were rejected, since the lands lay in different areas, and also because of the former application, which still was assumed in some manner to affect the choice. Nothing having been done in the interim, the federal land office cancelled such application in 1922.

In 1922, Congress again granted the right to exchange certain relinquished base lands for national forest land, which was unoccupied, surveyed and nonmineral in character. (42 Stat. 1017; 16 U.S.C.A. § 483, repealed in 1960.) If no exchange could be agreed upon, the Secretary of the Interior or an officer he might designate could quitclaim to such persons, their heirs or assigns, all title to the base lands which they had relinquished to the United States.

Terminating all right to make such exchanges for *in lieu* selections, the Congress by act of April 28, 1930 (ch. 219, § 6, 46 Stat. 257; 43 U.S.C.A. § 872), provided that: "Where a conveyance of land has been made or may hereafter be made to the United States in connection with an application for amendment of a patented entry or entries, for an exchange of lands, or for any other purpose, and the application in connection with which the conveyance was made is thereafter withdrawn or rejected, the Secretary of the Interior or such officer as he may designate is authorized and directed, if the deed of conveyance has been recorded, to execute a quitclaim deed of the conveyed land to the party or parties entitled thereto."

Upon repeal of the 1897 act by the 1905 act, in order to preserve a right of selection of *in lieu* lands from extinction, it was necessary to show that prior attempted selections had not failed through fault of the selector. After detailing the Maginnis selections theretofore attempted, the General Land Office, Department of the Interior, on May 10, 1933, held that Maginnis' right to select *in lieu* lands was still available, stating: "The rejection as to one 40 acre subdivision of the selection made on March 1, 1900, was clearly not the fault of the selector; and the cancellation of the selection as to the other subdivision was erroneous."

Apparently the heirs of Andrew Christiansen claimed that the power or powers of attorney from Maginnis which he had held entitled them to make

390 U.S. 957 [19 L.Ed.2d 1151, 88 S.Ct. 1041], and also is considered in a previous decision of this court in *Rosenberg* v. *C. W. Clarke Co.,* 200 Cal.App.2d 178 [19 Cal.Rptr. 191].

*in lieu* selection in their own names. The decision rejected the latter contention, while affirming the *in lieu* rights of Maginnis. To negative any claim of his heirs prior to their own, appellants assert that Christiansen probably held only the power to select *in lieu* lands, which terminated upon his death. By this rule, the appellants, as we shall see, are "hoist by their own petard." We consider, *infra,* appellants' objection to evidence of this decision.

On May 25, 1933, this decision was transmitted to Mr. Jeremiah Collins[3] by the Acting Assistant Commissioner of the General Land Office, in a letter headed "Promulgating departmental decision," which advised: "The new selection if filed should be filed in the proper district land office and should be accompanied with a copy of this letter." The decision required that any further selection of *in lieu* land had to be made by Maginnis, or under a valid power of attorney from him. None ever was made.[4]

Appellants assert that the two powers of attorney executed by Maginnis, one authorizing the holder thereof to select the *in lieu* lands; and the other, to convey them after any selection and to keep any proceeds for his own use, were in effect deeds to the *in lieu* land, or in the alternative, to the base land; and that appellant Dollarhide was a "substitute attorney in fact" and in effect, the grantee of the base land. Appellants' claim of title is based: (1) upon such powers; (2) upon quitclaim deeds from certain heirs; and (3) upon the default judgment of July 1, 1966.

First, it may be helpful to describe the use made of powers of attorney in relation to the *in lieu* land.

The right to select *in lieu* land in an exchange under the 1897 act was personal to the grantor. This was firmly established by administrative con-

---

[3]Apparently the opinion had been requested of the Department by Mr. Jeremiah Collins. We have no evidence concerning his dealings with the heirs of Christiansen, or with Charles H. Maginnis. We assume he was a dealer in federal land rights.

[4]By the act of August 5, 1955 (69 Stat. 534, 43 U.S.C.A. § 274, see note), Congress cut off all selections of *in lieu* land preserved under the saving clause of the 1905 act, which terminated the exchanges, by requiring that all outstanding rights claimed were barred if not presented to the government for recordation and recognition within two years after the passage of the act. Also, when any claim so recorded was transferred after August 5, 1955, the effective date of the act, the right was lost if not recorded with the Department of the Interior within six months after such transfer. There is evidence that the *in lieu* rights claimed by his heirs in the name of Maginnis were recorded on August 5, 1957, but there is no evidence that there was any recognition of appellants in connection therewith.

The act of July 6, 1960 (74 Stat. 334) repealed the act of September 22, 1922, and abolished all further *in lieu* exchanges and reconveyance of base lands to the grantors, their heirs and assigns. If application were made within one year of the date of the act, payment at the rate of $1.25 per acre would be made to the grantor, his heirs or assigns.

struction of the statute by the General Land Office and the Department of the Interior. This construction was followed in the 1933 decision determining the rights of Maginnis. It was approved in *Udall* v. *Battle Mountain Co., supra,* 385 F.2d 90, 95-96, cert. den. 390 U.S. 957 [19 L.Ed.2d 1151, 88 S.Ct. 1041], which held that the right of the grantor to select the *in lieu* land was not assignable. Although under other acts respecting the public lands, land rights were bought and sold on the market as "land scrip," passing by assignment, the Interior Department and its land office refused to recognize assignments under the 1897 act. But valid powers of attorney to act for the one entitled were recognized. In the transactions involved here, Charles H. Maginnis executed two powers of attorney. Under one, the attorney-in-fact was given the power to select the *in lieu* land desired in the name and stead of the grantor entitled. Under the other, the attorney-in-fact was given the power to convey the *in lieu* land when selected, as the act of the person receiving the *in lieu* land. This latter power of attorney was stated to be irrevocable; and the attorney-in-fact was authorized to receive to his own use the proceeds of any such disposition. Under each type of power, the attorney-in-fact was authorized to appoint a substitute attorney-in-fact. Nevertheless, the United States on its part refused to recognize that such subterfuges assigned or conveyed the *in lieu* rights.

Appellants contend that a person holding both powers of attorney has thereby received a deed, not only to the *in lieu* land when selected, but also to the base land if it is not. In one administrative determination, reviewed and affirmed in *Begue* v. *Grizzly Livestock & Land Co.,* 1 F. Supp. 229, the holder of a power of attorney to select, and also of a power of attorney to convey the *in lieu* land, made application for and received a deed from the United States relinquishing the base land to him. The theory was that under the 1922 act permitting relinquishment of the base land to the grantor, his heirs or assigns, he was an assign. This principal prop for appellants' contentions is knocked out from under them by the decision in *Udall* v. *Battle Mountain Co., supra,* 385 F.2d 90, which repudiated the administrative action as an aberration from the established law and administrative practice.

The *Begue* case did not establish a rule of property upon which appellants can rely. The district court merely held that the land department was charged with the duty under the act to determine to whom, as between the parties, the deed relinquishing the base land should go. Having such jurisdiction, the court held it would not interfere with the departmental determination.[5] The court in the *Begue* case did not declare that all holders of powers of attorney to convey the *in lieu* land were to be so entitled.

---

[5]The decision in the *Begue* case does not reveal the evidence which the land office had before it, in respect to the claims of each of the parties, other than the powers of attorney.

The *Udall* case, *supra,* 385 F.2d 90, at page 94, quotes with approval the departmental decision (*George L. Ramsey,* by Ted E. Collins, 58 I.D. 272, 294-295 (1942)) in which it was held these *in lieu* exchange rights were not floating scrip, did not provide for issuance of scrip in any form, and were not scrip rights, nor was the land scrip land. The court, at page 95, disapproved of reliance on the decision in *Begue* v. *Grizzly Livestock & Land Co., supra,* 1 F.Supp. 229, cited to the contrary, on the ground it did not reach the question and was "completely lacking in persuasion as to authoritative administrative construction." We concur in that view. Collins, by the *Ramsey* decision, was on notice of such nonassignability when he sold to Maggart, Dollarhide's predecessor; and the 1933 decision respecting Maginnis's rights reflected it in refusing to recognize the heirs of Christiansen petitioning in their own names.

■ The reconveyance to Charles H. and Marguerite Maginnis, "their heirs or assigns," is valid, even though at the time of reconveyance he and his first wife, Marguerite, were dead. (*Carlson* v. *Lindauer,* 119 Cal.App. 2d 292, 306-307 [259 P.2d 925].) The word "heirs" is no longer limited to designating the character of the estate, as at common law. (Cf. Civ. Code, § 1071; Prob. Code, § § 107-108.) Thus, *Hunter* v. *Watson,* 12 Cal. 363, 376 [73 Am.Dec. 543], is not applicable. *Ryder* v. *Young,* 9 Cal. App.2d 545 [50 P.2d 495], cited by appellants, bases its conclusion upon a finding of the intent of the parties.

■ The word "assigns" in the reconveyance related solely to the assignees, if any, of the base lands, and not to those having powers of attorney under which, in the name of Maginnis, they could select and convey the *in lieu* lands, when selected.

In construing the federal statutes under which the reconveyances were authorized, the court, in *Udall* v. *Battle Mountain Co., supra,* 385 F.2d 90, 95-96, stated with approval: "The Department, in construing this language, assumed that 'assigns' in the context in which it was used referred to transferees of title to the base lands rather than to transferees of the in lieu rights. Collins Land Co., 51 L.D. 190 (1925); B. F. Felton, 52 L.D. 484 (1928); California Door Co., 52 L.D. 644 (1929).

". . . The Act of 1897, as we have noted, contemplated a completed exchange. If an unfinished exchange were to be undone it is not unreasonable to require that the base lands return to the one who can claim equitable ownership."

In that decision (p. 93) it is stated that the purpose of the relinquish-

ment by the United States in such a form was to avoid the necessity of passing upon conflicting claims of others, arising from their transactions with the grantor.

Since rights under the federal statute are involved, we likewise conclude that the appellants are not "assigns" designated in the deed by the United States and that the United States, by issuing the reconveyance, did not thereby adjudicate the rights of the parties before us. It remained for the trial court in this action to determine the validity of their respective claims, in other words, to determine under the law of the situs whether another conclusion would be reached in relation to ownership of the base land when reconveyed.

Appellants deny that the reconveyance by the United States had any effect. The contention is that, since no *in lieu* selection was ever made, Charles H. Maginnis never lost the fee title. (*Roughton* v. *Knight,* 156 Cal. 123 [103 P. 844]; *Roughton* v. *Knight,* 219 U.S. 537 [55 L.Ed. 326, 31 S.Ct. 297]; *Downer* v. *Grizzly Livestock & Land Co.,* 6 Cal.App.2d 39, 42-43 [43 P.2d 843]; *Rosenberg* v. *C. W. Clarke Co.,* 200 Cal.App.2d 178, 180 [19 Cal.Rptr. 191].) At least, the recorded reconveyance served to clear the title of record, even on this theory. The doctrine of the cited cases is that the grantor's tendered title did not pass to the United States, when the tender was rejected, or not accepted. Such acceptance was found only in the grant of the equivalent *in lieu* land.

The contention is immaterial in view of our determination that appellants never acquired a title to the base land. The act of July 6, 1960, 74 Statutes 334, prevented further reconveyances in such instances, and provided for payment for such lands at $1.25 an acre.

Were appellants correct, all of their rights which were claimed to arise from powers of attorney to select, and to convey, the *in lieu* land when selected, perished in 1905 when the right of exchange was terminated. It therefore is anomalous[6] that appellants sought to exclude from evidence Exhibit 32, which consisted of a letter of transmittal and of the decision which adjudicated the right of Maginnis to make further *in lieu* selections, under the saving clause of the 1905 act.

Exhibit 32 is the decision, dated May 10, 1933, of the General Land Office, Department of the Interior, accompanied by a letter from the acting assistant commissioner. The copy submitted is under the seal of the depart-

---

[6]Anomalous, but understandable since the decision in question revealed that, subject to conditions, the heirs of one Andrew Christiansen had some interest, which under appellants' own theory (that one having powers of attorney, both to select and to convey the *in lieu* land, had a deed to both the base and *in lieu* selection) showed a claim of title prior to theirs.

ment, and by the custodian thereof is certified to be a true and correct (photostatic) copy of the records in his custody. Appellant Dollarhide or his *alter ego* recorded these documents with his powers of attorney in the office of the county recorder of Madera County, but urges that they were not properly received for record, and, hence, cannot be received in evidence, relying upon such recordation, for want of proper authentication.

 As presented, the documents constituting Exhibit 32 were entitled to judicial notice, and, hence, were properly received in evidence by the trial court. (Code Civ. Proc. § 1875, subds. (3), (4), applicable at the time of trial.) Judicial notice is extended to the actions of the Secretary of the Interior and the Commissioner of the General Land Office of the United States (now the Bureau of Land Management in the Department of the Interior).[7] (*Livermore* v. *Beal,* 18 Cal.App.2d 535, 541 [64 P.2d 987], cert. den. 302 U.S. 712, 713 [82 L.Ed. 550, 551, 58 S.Ct. 32], reh. den. 302 U.S. 777-778 [82 L.Ed. 601, 602, 58 S.Ct. 260].) The letter of transmittal of a departmental decision is entitled to such notice. (Cf. *Sheehan* v. *Vedder,* 108 Cal.App. 419, 425-426 [292 P. 175].)

 As we have previously related, this decision holding that Charles H. Maginnis still had the right to make an *in lieu* selection was transmitted to Mr. Jeremiah Collins on or about May 25, 1933. It also indicated that if a further selection was made by one holding his power of attorney, it would have to appear that such power was still in effect.

On June 16, 1933, Mr. Charles H. Maginnis executed a power of attorney to Jeremiah Collins authorizing him to convey any *in lieu* land selected; and on June 20, 1933, gave him a power of attorney to select the *in lieu* lands. The terms, conditions or circumstances are not known, except as revealed by the instruments themselves.

(1) As executed by Charles H. Maginnis and Florence M. Maginnis on June 16, 1933, the "Power of Attorney to Convey" was granted to Jeremiah Collins with the full power of substitution, but the space for the description of the *in lieu* land he was authorized to convey was left blank. The "Power of Attorney to Select," given to Jeremiah Collins by Maginnis on June 20, 1933, of course, carried no description of such land.

(2) On June 29, 1933, Jeremiah Collins then executed a "Substitute Power of Attorney to Select," referring to the "Departmental Decision of May 10, 1933, A17402, hereto attached." In this, the blank for the name of the substitute attorney in fact was filled, then or later, by the designa-

---

[7] As indicated in U. S. Government Organization Manual, 1967-68, page 261, this bureau officially maintains such land records in the Department of the Interior.

tion, United States Potash Company, Inc. of New York City. No blank was left for description of the *in lieu* lands selected.

(3) Contemporaneously, Jeremiah Collins executed a "Substitute Power of Attorney to Convey," in which a blank was left for the description of the *in lieu* lands selected and another blank was left for the name of a substitute attorney in fact to convey. The circumstances would indicate that this power of attorney also was given to United States Potash Company, Inc.

(4) On August 7, 1954, the United States Potash Company, Inc. executed its "Substitute Power of Attorney to Select" the *in lieu* lands. The name of the substitute attorney in fact was in blank. He purportedly was authorized "to act in its stead in making selection of 80 acres in the name of Charles H. Maginnis." Then, or later, the name of Ted E. Collins was inserted in the blank space as such attorney in fact. This power of attorney was in ordinary form. It did not purport to be irrevocable, nor to be for any consideration, nor to be coupled with any interest.

We may infer from the exhibits that contemporaneously Ted E. Collins also acquired the power to convey the *in lieu* lands executed by Jeremiah Collins; and inserted his own name as the substitute attorney in fact to convey. The space for description of the *in lieu* lands to be selected remained blank.

(5) On March 17, 1954, Ted E. Collins executed a "Substitute Power of Attorney to Select," leaving blank the name of the nominee, and contemporaneously executed a "Substitute Power of Attorney to Convey" with a blank for insertion of the description of the *in lieu* lands selected, and for insertion of the name of a substitute attorney in fact.

One Roy Maggart, thereafter, allegedly purchased these powers of attorney from Ted E. Collins or Collins Land Company, for what sum, if any, or upon what terms being entirely undisclosed. Appellant Charles M. Dollarhide never knew Ted Collins, nor had he ever seen him.

Dollarhide had been dealing with Roy Maggart, seeking only to acquire *in lieu* rights which he could exchange for land near Eureka, or later, in Lincoln County, Oregon. Maggart went up to Butte or Helena, Montana, to get the documents from Collins Land Company "not long at all" before he delivered them to Mr. Dollarhide, about a month before they were recorded in Madera County on December 2, 1958. The entire transaction was, therefore, subsequent to the recordation on April 7, 1958, of the relinquishment made by the United States to Charles H. Maginnis, his heirs or assigns.

We cannot discern any intent upon the part of Collins that the substitute power of attorney to convey *in lieu* land he executed in blank and which Maggart took to Dollarhide was intended to be a power of attorney transferring a title to the base land to him, with the power to convey it. The opinion in *Udall* v. *Battle Mountain Co., supra,* 385 F.2d 90, 95-96, notes that Collins Land Company was advised in 1925 (ruling, 51 L.D. 190) that the holder of powers to select and to convey *in lieu* lands was not an "assign" entitled to reconveyance of the base land under the 1922 act.

■ The power to act is determined solely from the language of the instrument. (*Blum* v. *Robertson,* 24 Cal. 127, 140.) Powers of attorney are strictly construed. Authority never is extended beyond that which is directly given or necessary and proper to carry the authority into full effect. (*Davidson* v. *Dallas,* 8 Cal. 227, 245.) ■ A power of attorney to convey land must contain a description of the land authorized to be sold or conveyed (*Stafford* v. *Lick,* 13 Cal. 240, 242; *Honore* v. *Lemm,* 181 Cal. 420, 422 [184 P. 664]). It may not be inserted afterward.

■ If the principal grants his attorney-in-fact the power to nominate and substitute a successor, that appointment must be his personal act. It is not competent for him to transfer an incompleted instrument to another, and for that other to make the nomination, since a personal relation of agency is created with the principal. This relationship goes beyond the designation of a mere sub-agent. ■ Since the attorney-in-fact, Collins, acknowledged the instrument with the blanks unfilled, unwarranted verity was imported when a name and/or description was inserted by Maggart after the acknowledgment had been made, followed in this instance by recordation in the Madera County records.

The deals in which Mr. Dollarhide hoped to exercise the powers to secure an *in lieu* selection did not materialize. Maggart's name was never inserted as an attorney-in-fact in the documents he secured by delivery from the Collins Land Company. Maggart inserted the name of C. M. Dollarhide as substitute attorney-in-fact in the blanks in all of the several instruments. In the instruments in which the attorney-in-fact was authorized to convey the *in lieu* lands when selected, the description thereof being left blank, he inserted as description the "original base lands herein described." The resulting nonsense on its face proclaims the material alteration: ". . . to grant, bargain, sell and convey by good and sufficient deed the *original base lands herein described* selected by Charles H. Maginnis in lieu of the N½ NE¼ Sec. 18, T. 5 S., R. 24 E., M.D.M., California, containing 80 acres, with full power of substitution. . . ."
In other words, "to convey the base lands selected in lieu of the base lands."

Any authority which Maggart received as an agent of Collins to receive the powers of attorney did not thereby confer any authority to alter them. (*Langenberger* v. *Kroeger,* 48 Cal. 147 [17 Am.Rep. 418].)

It is noted, also, that the authority granted to the substitute attorney-in-fact was to sell and convey the land selected by Maginnis *in lieu* of the base land. Such a change in description as to the land to be conveyed renders the document void. (*Montgomery* v. *Bank of America,* 85 Cal.App.2d 559 [193 P.2d 475]); *Pelton* v. *San Jacinto Lbr. Co.,* 113 Cal. 21 [45 P. 12]; *Woodard* v. *Grover,* 156 Cal. 581 [105 P. 736]; Civ. Code § 1700; *Jones* v. *Coulter,* 75 Cal.App. 540 [243 P. 487].)

In *Wunderlin* v. *Cadogan,* 50 Cal. 613, it is held that a deed without the name of a grantee is void, and, if one to whom it is delivered inserts the name of a grantee the named grantee gets no title.

Appellants contend there was no material alteration, citing *Sandpoint Lbr. & Pole Co., Ltd.* v. *Anderson,* 32 Idaho 571 [186 P. 254]. In that case the rights to the base land were not adjudicated. One Patten relinquished the base land to the United States. He apparently delivered to Murphy powers of attorney to select and, also, to convey the *in lieu* land, leaving the blank for designation of an attorney-in-fact in the powers of attorney. Irvine, without selecting the *in lieu* land, sold them back to Murphy, and did not claim any further interest therein. Murphy resold them to Culver, erasing Irvine's name as attorney-in-fact and substituting Culver's. Culver procured the *in lieu* grant in the name of Patten and conveyed to Sandpoint. Irvine was induced to convey the *in lieu* land as attorney-in-fact for Patten, to one Davis, allegedly to clear the title.

The grantee of Culver prevailed. The appellant unsuccessfully contended the erasure of Irvine's name as attorney-in-fact was a material alteration, and that Irvine's authority continued, which even Irvine disclaimed. Equitably, the court held Culver's grantee to the *in lieu* land had the better right.

We reject appellants' claim, under the *Sandpoint* case, that in California a personal agency relationship, such as an attorney-in-fact to convey real property, can be created by leaving an anonymous blank, to be filled in willy-nilly by whoever finds the instrument in his hands and determines to assume that status. An authority to convey real estate must itself be in writing (Civ. Code, § 1624, subd. (4); *Lyne* v. *Bonner,* 129 Cal. App.2d 743, 746 [277 P.2d 941]), and the designation of the agent to convey is vital.

Semantically speaking, filling in a blank may not constitute an *alteration* when it is done with consent and authority. Nevertheless, to include and describe property other than that which was authorized is a

material alteration. (*American Nat. Bank of Wetumka* v. *Hightower,* 184 Okla. 294 [87 P.2d 311].)

█ Even as to the *"in lieu"* property, the powers did not purport to permit the attorney-in-fact to convey a title before selection of the property. After selection of *in lieu* land the power of attorney to convey presupposed execution of another instrument to the grantee by the attorney-in-fact in the name of Maginnis.

█ The donee of the power has no title to the property itself but has authority to act for the donor in the disposition of the property. Maggart, having no authority in writing, could not insert the name of the substitute attorney-in-fact nor a description of the property.

In *Rosenberg* v. *C. W. Clarke Co., supra,* 200 Cal.App.2d 178, 186, it is said: "One of the contentions made by the appellant is that while he holds no formal deed to the land, still by reason of an alleged but unpleaded and unproven custom and the interpretation of powers of attorney by other courts in two cases, these powers of attorney are to be construed in effect as deeds. The two cases are *Begue* v. *Grizzly Live Stock & Land Co.,* 1 F. Supp. 229 and *Sandpoint Lbr. & Pole Co.* v. *Anderson,* 32 Idaho 571 [186 P. 254]."

The argument here is that the alterations were immaterial since they only supplied what otherwise would be supplied by intendment. (*Cavitt* v. *Raje,* 29 Cal.App. 659, 661 [156 P. 519].) We find no such intendment in the specific terms of the powers of attorney.

This court in *Rosenberg* v. *C. W. Clarke Co., supra,* 200 Cal.App.2d 178, 187, distinguished the *Begue* and *Sandpoint* cases on the ground that, in those cases, the claimant held powers of attorney, both to select and convey the selected *in lieu* land. But it did not hold that if both powers were vested in one person the contention made was valid. The application of the claimed doctrine in *Rosenberg* was sought "by reason of an alleged but unpleaded and unproven custom," and it still remains so in this case.

In the absence of any selection of the *in lieu* lands, any power of attorney to convey them never took effect.

Appellants made the point that the rights of Christiansen were terminated under the power of attorney by the death of Christiansen. █ It is the general rule that a power of attorney, being an agency, is terminated by the death of either the one granting the power or of the one receiving it. (2 Am. Jur., Agency, §§ 59, 60, pp. 52-53.) █ Where a power is coupled with an interest, it is not terminated by death. (2 Am.Jur., Agency, § 65, p. 55, §§ 77-78, pp. 61-64.) None of the powers of attorney to select the

*in lieu* lands declared that they were irrevocable, nor that they were coupled with an interest. Assuming that the power of attorney to convey the *in lieu* land ever became operative, it is urged that it was coupled with an interest, since it was declared to be irrevocable, and the attorney-in-fact upon selection of the *in lieu* land had full power of disposition and the power to retain the proceeds.

Despite any declaration of irrevocability, a power is revocable unless it is coupled with an interest. (*Capital Nat. Bank of Sacramento* v. *Stoll,* 220 Cal. 260, 264 [30 P.2d 411].)

For a power to be coupled with an interest so as to be irrevocable there must be "a specific, present and coexisting interest in the subject of the power or agency." (*O'Connell* v. *Superior Court,* 2 Cal.2d 418, 422 [41 P.2d 334, 97 A.L.R. 918].)

The question is: does the agent have an interest or estate in the subject matter of the agency, independently of the power conferred, or does the interest or estate accrue by or after the exercise of the power conferred? If the former, the agency is coupled with an interest; if the latter, it is not. (*Halloran-Judge Trust Co.* v. *Heath,* 70 Utah 124 [258 P. 342, 64 A.L.R. 368]; *Taylor* v. *Burns,* 203 U.S. 120 [51 L.Ed. 116, 27 S.Ct. 40].) Under the powers of attorney here relied upon, any interest in the land to which they related could only be gained by the exercise of the powers. The power, therefore, was not coupled with an interest. Under this definition, the terminology used by the parties is not controlling, even where the instrument purports to make ·the power irrevocable. (*O'Connell* v. *Superior Court, supra,* 2 Cal.2d 418 [41 P.2d 334, 97 A.L.R. 918]; *Todd* v. *Superior Court of San Francisco,* 181 Cal. 406, 417 [184 P. 684, 7 A.L.R. 938]; *McColgan* v. *Bank òf California Assn.,* 208 Cal. 329 [281 P. 381, 65 A.L.R. 1075]; *Capital Nat. Bank of Sacramento* v. *Stoll, supra,* 220 Cal. 260, 264.)

Under this test the powers of attorney upon which appellants rely were not coupled with an interest. They conveyed no title to the holder thereof, in and of themselves. Therefore, we conclude that all power to act under the original powers of attorney granted by Maginnis terminated upon his death in 1937. (Rest.2d Agency, § 120; 3 Am.Jur.2d, Agency, § 51, p. 453; *Smith* v. *Bliss,* 44 Cal.App.2d 171, 176 [112 P.2d 30].)

". . . Thus, if the power is not coupled with an interest, it is revoked by the death of the principal; and the mere fact that the power is irrevocable during the lifetime of the person giving it does not prevent operation of the rule. Applying these principles, a power of attorney to convey lands . . . is terminated by the principal's death." (3 Am.Jur.2d, § 51, pp. 453, 454,

citing inter alia the cases of *Hanrick* v. *Patrick,* 119 U. S. 156 [30 L.Ed. 396, 7 S.Ct. 147]; *Hunt* v. *Rhodes,* 26 U.S. (1 Pet.) 1 [7 L.Ed. 27]; *Hunt* v. *Rousmainer's Administrators,* 21 U. S. (8 Wheat.) 174 [5 L.Ed. 589].)

In *McColgan* v. *Bank of California Assn., supra,* 208 Cal. 329, 335, the California Supreme Court says of this doctrine, ". . . in principle, it has been recognized by this court many times."

■ Under the federal law, the subject matter, the "in lieu" land, is not assignable, and hence, no interest is transferred by a power of attorney, and the power of attorney is revocable. (*Cox* v. *Hughes,* 10 Cal.App. 553 [102 P. 956], 28 A.L.R.2d 1264.)

■ There is no legal basis for contending, as appellants do, that the powers of attorney given to Collins were a grant deed to the *base land,* conclusive against the grantor, and the respondent representing the heirs of the grantor (Civ. Code, § 1107), estopping them to deny appellants' claim of title (citing 15 Cal.Jur.2d, Deeds, § 204, p. 608). A power is not an estate. (*Riley* v. *Gordon,* 137 Cal.App. 311 [30 P.2d 617].) Had estoppel been found, the trial court was required under the issues to make a finding to that effect. The ultimate finding that respondent has title, over appellants' contentions, implicitly negatives the estoppel and no further ultimate finding is required, especially when it appears appellants had no title at all to the base land.

■ An administrator cannot be estopped to assert any legal defense available to him to protect the estate from an unauthorized claim. (*Claude T. Lindsay, Inc.* v. *Crocker-Anglo Nat. Bank,* 207 Cal.App.2d 199 [24 Cal.Rptr. 384].)

It is clear that Jeremiah Collins in 1933 by reason of the two powers of attorney secured from Maginnis received a valid, available right to act as attorney-in-fact to select and convey *in lieu* lands. No equities are created against Maginnis, his heirs and assigns by reason of the failure of Collins and his substitutes to exercise such powers before the death of Maginnis; or, in any event, to exercise such powers before *in lieu* rights were terminated by the United States many years later. (Civ. Code, § 1691.) In effect, they had an option and failed to use it before it was terminated.

If under the law and the facts rescission were now possible on the ground of a failure of consideration, the recompense would be sought in a money claim against the estate; it would not entitle appellants to the base land. There is no evidence what the arrangements were between Maginnis and Collins, and, consequently, there is no basis for determining what, if any, consideration should be restored in such a case.

The right of action, if any, would have accrued to Ted E. Collins or the Collins Land Company in 1937, when the powers of attorney lapsed, by reason of the death of Charles H. Maginnis. The statutes of limitation have long since run, and the doctrine of laches would be applicable in any event to bar such a claim.

 Under the evidence, we find no basis for affording appellants pre-emptive rights on the ground that Dollarhide was a bona fide purchaser of the powers of attorney, for value. They were not negotiable instruments. He was chargeable with notice of the record title, but testified he did nothing until after this suit to check it. The alteration of the instruments was in his presence.

He chose to abandon his existing right to seek *in lieu* lands when he acted under the altered instruments to convey the base land to the appellant Madera Timber Company, and received proceeds from the lumbering operation.

 The operation of the general rules regarding unauthorized material alterations cannot be avoided by proof that one claiming the title was a bona fide purchaser, who took without knowledge or facts to put him on inquiry. (4 Am.Jur.2d, Alteration of Instruments, § 27, p. 26; *Angle* v. *Northwestern Life Ins. Co.,* 92 U.S. 330 [23 L.Ed. 556]; 4 Am.Jur.2d, Alteration of Instruments, § 8, p. 10; *Walsh* v. *Hunt,* 120 Cal. 46 [52 P. 115, 39 L.R.A. 697].)

The fact seems to be that Mr. Dollarhide's actions were induced by re-liance upon the legal advice he received, which turned out to be erroneous, though prompted by the *Begue* case when given.

Equitable sympathy is sought for Mr. Dollarhide, with emphasis upon his expenditure to acquire the powers of attorney.

The testimony of Mr. Dollarhide respecting his alleged purchase of the powers of attorney from Maggart may well have been found incredible by the trial judge, for we find it so. In one version, he stated that for considera-tion he had cancelled a note which Mr. Maggart owed in the sum of $50,000. In another, he had paid the money to Maggart by check, or a series of checks. He had never seen the base land, nor ever been near it; when he paid Maggart $50,000 he had no idea what timber was on it. He had never discussed the acquisition of the base land. One may refuse to believe that one would pay $50,000 for the base land under such circum-stances. Until he talked with Maggart a day or so before his deposition was taken, he did not really know whether he or Maggart made the material alterations on the instruments.

At the trial, he produced a document signed by Maggart, which read as follows:

"March 17, 1954

"Received by Mr. Charles M. Dollarhide, $50,000.00 in payment for eighty (80) acres.

"Forest lieu Scrip

"The right of Charles H. Maginnis to select lieu lands under the Acts of 1897 and March, 1905, in exchange for the N½ NE¼ Sec. 18, T. 5 S., R. 24 E.M.D.M., California.

"The undersigned relinquishes and conveys to the said Charles M. Dollarhide, all his right title and interest to the Base Lands here and above described.

"/s/ Roy Maggart."

In 1954, Mr. Dollarhide testified he had no intention of acquiring the base lands. Until the present controversy arose, there was no reason for Maggart to quitclaim land he never owned to Dollarhide. Allegedly, the document was drafted by Dollarhide's attorney in his Portland office. But the fact that it was in the form indicated belies this. Fifty thousand dollars by some remarkable coincidence is the value given to the timber logged off the base land for which damages were sought.

According to Mr. Dollarhide, the receipt was given to him on the date it bears; but his own testimony is that he did not receive the file of powers of attorney until about a month before December 2, 1958. It hardly is credible that the receipt would precede the delivery of the documents by four years, and that Maggart when *in lieu* rights were still available would take pains to relinquish and convey to Dollarhide all his nonexistent right, title and interest in the base lands; Mr. Dollarhide testified that this receipt was drawn up by his attorney in his office and signed there.[8] This is hardly consistent with its rough form.

At some point, it was determined not to seek the available *in lieu* lands. This was evidenced by the formation of the Madera Timber Company. Its

---

[8]The unsuccessful contentions of Mr. William B. Murray (Portland attorney of Mr. Dollarhide) as counsel in the *Udall* and associated cases, and in a sequel thereto, *Lade* v. *Udall*, 295 F.Supp. 265, may suggest that the assumptions upon which Mr. Dollarhide and Maggart acted proceeded from him. The *Udall* case, overruling the implications of the *Begue* case, was subsequent to the transactions here under scrutiny.

title would indicate the purpose to exploit the base land, leading Maggart to alter the power to convey the *in lieu* land, when selected, to a purported power to convey the base land, and to make a personal quitclaim to Dollarhide of the land he never owned apart from the altered powers of attorney.

In *Rosenberg* v. *C. W. Clark Co., supra,* 200 Cal.App.2d 178, there was before this court evidence of a similar alteration in a power of attorney, made by Maggart. After selling the altered powers of attorney to Mr. Dollarhide, and though he gave his receipt and quitclaim to him, Maggart, in his own name, entered into an agreement to sell David Turnidge the lumber on the base land, which agreement was recorded in Madera County, when Maggart had no ownership of it at all. Only later did this come to the knowledge of an indignant Dollarhide. Relying on the altered powers, Dollarhide purported to convey the base land to his *alter ego,* the Madera Timber Company, as attorney-in-fact for Charles H. Maginnis and Florence M. Maginnis, by deed dated October 1, 1959, which was recorded on October 9, 1959.

The evidence amply supports the finding that the Madera Timber Company, a Nevada corporation, is the *alter ego* of Charles Dollarhide. The deeds of the base property (recorded in book 754, page 81, of Madera County) to that corporation are null and void for want of authority of Charles Dollarhide to execute the same to the base land, either as owner or as the purported attorney-in-fact of Charles H. Maginnis, or otherwise.

By thus conveying the base land, Dollarhide thereby adopted and ratified the alteration made in the power of attorney by Maggart.

There is no evidence in this case that Dollarhide ever held a power of attorney from Charles H. Maginnis and Florence M. Maginnis to deal with the base land.

Appellants contend that some title was acquired by Dollarhide by virtue of quitclaim deeds executed by Florence M. Maginnis and Charles H. Maginnis (son) and Thelma L. Maginnis (son's wife) to him on September 3, 1959. In these, they relinquished to him any rights in and to the base land derived as heirs of Charles H. Maginnis. These quitclaims were ineffective to vest any title to the base land in Dollarhide. In each case there were prior grants made by the same parties dated January 16, 1957, and recorded on June 12, 1958, to the First National Bank in Albuquerque as trustee. Subject to administration, the bank holds their interest under contracts whereby the base land after probate and quieting of title is to be sold. They are to receive a portion of the net proceeds of the sale. These contracts were made with Ernest O. Buhler for services in securing the

reconveyance of the base land from the United States and paying the expenses of clearing the title.

Each purported quitclaim to Dollarhide on its face recognized the existence of the prior conveyance, but each signer declared that he did not have title when his prior conveyance to the Albuquerque bank was made. The conveyances in trust were made to the Albuquerque bank prior to the reconveyance by the United States. But the intention of the grantors expressed therein was that such conveyance and contract should operate on any after-acquired title.

The judgment for respondent administrator determined by necessary implication that appellants' claim of title was invalid, so far as it was based upon the quitclaim deeds from Charles H. Maginnis (son) and his wife, and Florence M. Maginnis. The evidence and applicable equitable principles fully support such a determination. In addition to the fact of the prior recorded conveyances the grantors had made to the Albuquerque bank, we find a number of other circumstances.

The evidence shows that but for the work of the Buhlers, appellants would have succeeded in taking over the base land, conveyed 50 years before by the grantor, recording the altered power of attorney without the intervention of anyone. From the evidence respecting the Buhler contract, it appears that he undertook to clear the title on behalf of the heirs within 10 years. The quitclaim deeds prepared and signed in the office of Dollarhide's attorney in Portland indicate full knowledge on the part of Dollarhide of their contractual arrangement. The contract had been recorded previously in Madera County.

Frustration of the performance of the Buhler contract by further clouding the title, impeding performance within the time limit, was to appellants' advantage. The son, Charles H. Maginnis, bore the same name as his father, and Florence M. Maginnis was the widow of the first Charles H. Maginnis. Quitclaims by them might produce confusion on the record. Their deeds were solicited by appellants.

It seems clear that Charles H. Maginnis (son) and his wife and Florence M. Maginnis were convinced by appellants that they had no title, and that they had had no title when they entered the Buhler contracts and made the prior conveyances to the Albuquerque bank. A nominal or no consideration was given by appellants for the quitclaim deeds, indicating that the grantors had been convinced they had no rights or that they were of minimal value. Neither the recitals nor the representations which apparently produced them were true in fact or valid in law.

If it were assumed that their title was derived solely from the reconvey-

ance by the United States to them as heirs, which occurred after the Buhler contract and conveyance to the bank, the recital that they had no title at the time of the conveyance was a literal truth, warped in the context of the situation into the absence of any title at all. If we assume that these grantors ever had actual knowledge of the quiet title suit brought against them, such persuasions that they had no title and the fact of such quitclaims would explain their failure to appear individually. Thus, the transaction infected that later proceeding.

■ No one can be held "to have waived a right, benefit, or advantage, where he acted under a misapprehension of the facts, especially where he had been put off his guard or misled by the conduct of the other party." (92 C.J.S., Waiver, pp. 1058-1059; *Hacker Pipe & Supply Co.* v. *Chapman Valve Mfg. Co.,* 17 Cal.App.2d 265, 274 [61 P.2d 944], citing *Craig* v. *White,* 187 Cal. 489, 498 [202 P. 648]; 26A C.J.S., Descent and Distribution, § 73(2), pp. 697-698.) ■ One may have his title quieted against an interest obtained from him by a fraudulent misrepresentation of the extent of his ownership. (*Seeger* v. *Odell,* 18 Cal.2d 409, 414-415 [115 P.2d 977, 136 A.L.R. 1291].) The result is the same, if rejecting any fraudulent intent here, it is concluded that there was a mutual mistake of law and fact. Equity will not enforce such deeds, even if they otherwise would be effective, against the respondent. (*Roesch* v. *De Mota,* 24 Cal.2d 563, 572 [150 P.2d 422].)

■ Even more conclusive, the evidence clearly demonstrates a wilful tortious interference by appellants with the contract rights of Buhler. In equity, they may not derive any advantage from their own wrong.

■ Since the heirs' title is subject to the prior possession and control of the administrator in administration of the estate, the rights of the Albuquerque bank are likewise subordinate. In this quiet title action, therefore, the bank is not a necessary party, nor does the fact that a trust may result when the property is distributed defeat the right of the administrator to quiet title against appellants.

The trial court should have found that the judgment of July 1, 1966, based on the cross-complaint was null and void upon its face. Its validity was an issue to be decided under the pretrial order.

■ In this equitable proceeding, the court has the duty to adjudicate the rights claimed under the void judgment, leaving nothing for further litigation. (*Bank of America Nat. Trust & Sav. Assn.* v. *Feig,* 21 Cal.App. 2d 247, 252 [68 P.2d 985]; *Record Machine & Tool Co.* v. *Pageman Holding Corp.,* 42 Cal.2d 227 [266 P.2d 1].) The judgment as rendered need not be modified, but the findings of fact and conclusions of law as

they pertain to the default judgment will be conformed to the views which we now express.

All parties were entitled to assume that all of the issues of the entire cause would be tried on the dates specified in the pretrial order. On July 1, 1966, only a few days before the first date set for trial, without notice to the administrator, himself a cross-defendant, and with no previous motion to amend the pretrial order or to sever the trial of the cross-complaint from the main action, counsel for appellant Madera Timber Company purported to procure an independent default judgment against the heirs named cross-defendants (entered in Book 12 of Judgments, page 372, the same day).

 An effort to unilaterally evade the pretrial order and independently secure a judgment authorizes the reviewing court to rule the judgment void, especially where the validity of default itself was a matter set to be tried in the case in chief. (Cf. *Fitzsimmons* v. *Jones,* 179 Cal.App.2d 5 [3 Cal.Rptr. 373], counsel after pretrial order moved for judgment on the pleadings (defective answer) which the order superseded.) In view of the unitary cause of action in quiet title, paragraph 5 of the pretrial conference order, setting out for determination the effect of "any judgment by default which may hereafter be entered *thereon*" (italics added) cannot be interpreted to authorize an independent application on another day to another judge for an independent default judgment.

 A purported judgment on a cross-complaint is not a final judgment, and represents an attempt to improperly split a single cause of action. (*Nicholson* v. *Henderson,* 25 Cal.2d 375 [153 P.2d 945]; cf. *Elm* v. *Sacramento Suburban Fruit Lands Co.,* 217 Cal. 223 [17 P.2d 1003].) This was entirely unauthorized and is void upon its face. There was then no cross-complaint, independent of the pretrial order.

 The judgment of July 1, 1966, likewise was void, because the individual heirs cross-defendant legally were not in default. The amended cross-complaint added nothing to the amended answer. It asserted title and possession of the real property to be in cross-complainants, and prayed that it be decreed that cross-defendants had no right, title or interest therein.

 When a cross-complaint in effect is only an answer, or a mere repetition of the answer, no answer to the cross-complaint is required. (*Turner* v. *East Side Canal etc. Co.,* 169 Cal. 652 [147 P. 579]; *Olson* v. *Basin Oil Co.,* 136 Cal.App.2d 543, 565 [288 P.2d 952]; *Johnston* v. *Wheeler,* 118 Cal.App. 439, 441 [5 P.2d 431].)

 Only new matter in a cross-complaint is admitted by a failure

to answer. (*Priester* v. *Citizens Nat. etc. Bank,* 131 Cal.App.2d 314 [280 P.2d 835].) ▆ Here, there was none. New matter in the answer to the complaint is deemed denied by operation of law. (Code Civ. Proc. § 462; *Manuel* v. *Kiser,* 94 Cal.App.2d 540, 546 [210 P.2d 918].)

▆ Under the rule peculiar to quiet title actions, defendants need not seek affirmative relief in a cross-complaint. If plaintiff fails to establish title, the defendants may have an affirmative judgment declaring their rights asserted in the answer. (*District Bond Co.* v. *Pollack,* 19 Cal.2d 304, 307 [121 P.2d 7].) ▆ The cross-complaint herein, therefore, could have been stricken, since it added nothing to the proceeding. The issues were covered completely in the pretrial order. Since the plaintiff's claim was on behalf of all the heirs, individual heirs were not in default for failing to answer the cross-complaint. (*Furnivall* v. *Groves,* 154 Cal.App.2d 846 [317 P.2d 117]; *Brooks* v. *White,* 22 Cal.App. 719, 721 [136 P. 500]; *Lichtenstein* v. *Superior Court,* 85 Cal.App.2d 486, 488 [193 P.2d 508].)

▆ The heirs are represented *in gross* by the administrator plaintiff. (Prob. Code, § § 573, 581; *Patchett* v. *Webber,* 198 Cal. 440 [245 P. 422]; *Rundell* v. *McDonald,* 62 Cal.App. 721, 728 [217 P. 1082].) The heirs may be joined as parties in this quiet title action, but they were neither necessary nor indispensable parties. (Prob. Code, § 581; Code Civ. Proc., § 369; *Estate of Kessler,* 32 Cal.2d 367, 369 [196 P.2d 559]; *Sterrett* v. *Barker,* 119 Cal. 492 [51 P. 695].) ▆ A judgment rendered against the administrator without joining the heirs is binding upon all the heirs (*Patchett* v. *Webber, supra,* 198 Cal. 440; *Cunningham* v. *Ashley,* 45 Cal. 485), and a judgment for the estate should be in the name of the administrator and not the heirs (*Rogers* v. *Schlotterback,* 167 Cal. 35 [138 P. 728]).

Under the circumstances here, all the heirs were represented by the administrator, suing as plaintiff and answering as a cross-defendant, including those individually named as cross-defendants in the cross-complaint. (*Sjoberg* v. *Hastorf,* 33 Cal.2d 116, 118 [199 P.2d 668].)

▆ In any quiet title action, the executor or administrator in an undistributed estate is the party against whom the action must be brought. (Prob. Code, § 573.)

▆ The default judgment taken by the plaintiff against Joseph C. Donnerberg and Mrs. Ray Karp must also be held null and void. The petition for administration of the estate, in evidence in this case, lists them as heirs and there is no evidence otherwise. The administrator who legally represents all the heirs may not seek to quiet title against some of them. No special circumstances exist to make such a suit proper.

▆ Under the situation here presented, the invalid judgment in excess

of jurisdiction is properly attacked in this proceeding, and relief is not limited by Code of Civil Procedure section 473. (*Furnivall* v. *Groves, supra,* 154 Cal.App.2d 846, 847.)

The administrator plaintiff has power to sue appellants for trespass (Prob. Code, § 574), and to recover treble damages for timber cut and carried away. (Code Civ. Proc., § 733; Civ. Code, § 3346, subd. (a).) There is no contention that the damages awarded are not fully supported by the law and evidence if title is found to be in respondent administrator, and the heirs he represents.

Appellant Dollarhide claims that by virtue of the quitclaim deeds and the default judgment on the cross-complaint, he and his *alter ego,* Madera Timber Company, became a cotenant with the other heirs; hence, it is urged that the trespass action would not lie, though an accounting could be had for the proceeds of the timber cut.

Even if they had been cotenants, the cotenancy rule has no application in this case since the alleged "cotenant" claimed the entire title against the heirs (*Robinson* v. *Bledsoe,* 23 Cal.App. 687 [139 P. 245]). Dollarhide purported to exercise dominion over, and to convey, the entire property under claim of right against all the heirs. Without consent of his cotenants, a cotenant is without authority to contract for the cutting and removal of timber from the common property, especially where, as here, there is evidence of improper cutting, which seriously impaired the value and future potential of the land. (*Fuller* v. *Montafi,* 55 Cal.App. 314, 319 [203 P. 406]; *Scarborough* v. *Woodill,* 7 Cal.App. 39 [93 P. 383].)

Appellants contend that they were entitled to findings on 56 requests, most of which were not granted by the court. The Code of Civil Procedure sections 632 and 634 only require that the findings shall disclose the court's determination of all issues of fact in the case. This has been properly interpreted to relate to ultimate facts and not to require the court to make a specific determination on every conflict of evidence, much less, to diagram all the intermediate decisions on points of law. (*Moore* v. *Hall,* 250 Cal.App.2d 25 [58 Cal.Rptr. 70].) It still is the rule that the findings of ultimate facts include by necessary intendment the findings on all intermediate facts necessary to sustain them (*Hammond* v. *Mustard,* 257 Cal.App.2d 384 [64 Cal.Rptr. 829]), and where this is so, the court may reject a request for specific findings that in reality is a request for a statement of evidentiary facts. (*South Santa Clara etc. Dist.* v. *Johnson,* 231 Cal.App. 2d 388 [41 Cal.Rptr. 846].) On appeal, reasonable conflicts in the evidence are construed in favor of the findings. (*Burr & Ladd, Inc.* v. *Marlett,* 230 Cal.App.2d 468 [41 Cal.Rptr. 130].)

It is true that no ultimate finding of fact will be presumed if a court expressly declines to make it. (*Wise* v. *Clapper,* 257 Cal.App.2d 770 [65 Cal.Rptr. 231].)

The established practice presupposes that counsel desiring such special findings will draft and propose them in the usual form (Code Civ. Proc., § 634). The action of the court in approving or disapproving them will constitute the ruling. Appellants here sought to conduct a general inquisition and neither drafted nor submitted any proposals for such consideration.

Any deficiencies claimed by appellants in this regard are not grounds for reversal of the judgment. (*Coleman Engineering Co.* v. *North American Aviation, Inc.,* 65 Cal.2d 396 [55 Cal.Rptr. 1, 420 P.2d 713]; *Mashon* v. *Haddock,* 190 Cal.App.2d 151 [11 Cal.Rptr. 865]; *Spindler Realty Corp.* v. *Monning,* 243 Cal.App.2d 255 [53 Cal.Rptr. 7]; *Fairbairn* v. *Fairbairn,* 194 Cal.App.2d 501 [15 Cal.Rptr. 548]; *Estate of Emery,* 199 Cal.App.2d 22 [18 Cal.Rptr. 86]; Cal. Const., art. VI, § 13.)

Accordingly, it is ordered (1) that the trial court strike from Finding of Fact number 2 in the Amended Findings of Fact and Conclusions of Law the names, Joseph C. Donnerberg and Mrs. Ray Karp, and likewise that said names be stricken from Conclusion of Law number 1; (2) that the trial court also strike from the Amended Findings of Fact and Conclusions of Law, Finding number 10 and Conclusion of Law number 7 and substitute as Finding number 10:

"That at the time the purported default was taken of the defendants upon the cross-complaint, they were not in law or fact in default and that the pretrial order herein had superseded the cross-complaint; and that the procedure to secure judgment on July 1, 1966, was unauthorized, and inequitable in respect to the parties, court and cause; and that it is equitable to annul such purported judgment, and to determine all rights by the trial herein conducted under the Pretrial Order."

And likewise to substitute as Conclusion of Law number 7:

"That the judgment entered on July 1, 1966, in Book 12 of Judgments, page 372, Madera County, is null and void and should be vacated and annulled."

The judgment herein is modified by striking therefrom the names of Joseph C. Donnerberg and Mrs. Ray Karp; and as so modified, is affirmed.

Respondent will recover his costs. The trial court will make any supplementary orders, if required, to give full effect to the determinations herein made and the judgment.

Stone, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied February 24, 1970, and appellants' petition for a hearing by the Supreme Court was denied March 25, 1970.