Filed 2/21/14  Total Access Payments v. Shaw CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TOTAL ACCESS PAYMENTS, INC., <br><br>    Plaintiff and Appellant, <br><br>        v. <br><br> ANGELA SHAW et al., <br><br>    Defendants and Respondents; <br><br> MATTHEW ANDERSON, <br><br>    Defendant and Appellant. | G048188 <br> (Consol. with G048302) <br><br> (Super. Ct. No. 30-2011-00507384) <br><br> O P I N I O N |

Appeals from a judgment in G048188 and a postjudgment order in G048302 of the Superior Court of Orange County, Derek W. Hunt, Judge.  Judgment affirmed in part, reversed in part, and remanded.  Postjudgment order affirmed.

The Layfield Law Firm, Philip J. Layfield and Christopher S. Walton for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Craton & Switzer, Curt R. Craton and Robert E. Tokar for Defendant and Appellant.

* * *

INTRODUCTION

If it seems too good to be true, it probably is.  Total Access Payments, Inc. (Total Access), invested $1 million, with the promise that it would realize a profit of $143 million—a 14,200 percent return on investment.  Total Access's initial investment, however, disappeared.  It sued to recover its investment, as well as punitive damages.

Several defendants defaulted.  Trial was held on Total Access's claims against the nondefaulted defendants.  After the trial, Total Access requested a default judgment against the defaulted defendants.  The trial court determined, based on the evidence at trial, as well as additional evidence presented in connection with the default judgment prove-up, that Total Access was not entitled to recover any damages from three of the defaulted defendants.  Total Access appeals from the judgment only as to those three defendants.  This appeal relates solely to whether the trial court erred in its analysis of liability and damages at the prove-up hearing pertaining to the defaulted defendants.

One of the defaulted defendants (Richard Kryza) was never named in the substantive allegations of the complaint; the trial court did not err in refusing to enter judgment against him, and we affirm the judgment as to Kryza.  As to the other two defaulted defendants (Matthew Anderson and Dakota Holdings, Inc.), the complaint stated causes of action against them for conversion, fraud, and unfair business practices. The court did not determine whether Total Access had made a prima facie showing of damages as to those causes of action against Anderson and Dakota Holdings, Inc. Therefore, we reverse the judgment and remand the matter to the trial court for further consideration of damages, both compensatory and punitive.

2

Defaulted defendant Matthew Anderson filed a cross-appeal, arguing the trial court never acquired jurisdiction over him because he was not properly served. Anderson asks that if the judgment is reversed on Total Access's appeal, the order denying Anderson's motion for relief from default also be reversed. The trial court did not err in denying the motion for relief from default, and we affirm that ruling.

Anderson contends that he is the prevailing party, and that the trial court erred in granting Total Access's motion to tax his costs. Being in default, Anderson had no right to file a memorandum of costs, and the trial court did not err in taxing costs. We therefore affirm the order granting the motion to tax costs.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In December 2009, Maximum Business Innovations, Inc. (MBI), convinced Total Access to place $1 million in escrow for the benefit of MBI. MBI promised that Total Access would then be able to "leas[e]" a bank account with about $50 million on deposit, from which Total Access could obtain a loan of $40 million, which would then be invested, at MBI's direction, and produce about $143 million. Instead, the money in the escrow account was released to several different companies and individuals, leaving Total Access with nothing.

In September 2011, Total Access sued multiple defendants, which it grouped into two categories: the "MBI Defendants" and the "Dakota Defendants." The causes of action in the complaint were as follows: (1) conversion, against the MBI Defendants and the Dakota Defendants; (2) breach of fiduciary duty, against the MBI Defendants; (3) professional negligence, against the MBI Defendants; (4) fraud, against the MBI Defendants and the Dakota Defendants; (5) to set aside fraudulent conveyances, against the MBI Defendants and the Dakota Defendants; (6) unfair business practices, against the MBI Defendants and the Dakota Defendants; and (7) unjust enrichment, against the MBI Defendants and the Dakota Defendants.

3

Defaults of the following defendants were entered: MBI, Anderson, Kevin McBride, Kryza, Ideal Development and Investments, LLC, and Dakota Holdings, Inc. (Dakota Holdings).

When the case went to trial, "the court assured counsel that to the extent that parties had been defaulted, it would receive the evidence put before the jury as also constituting evidence against the defaulted defendants . . . . Furthermore, when the jury portion of the trial ended, the court stated that it would permit plaintiff to submit a default package to augment any evidence pertinent to the defaulted defendants."

On November 13, 2012, Anderson filed a motion for relief from default, pursuant to Code of Civil Procedure sections 473 and 473.5. The trial court denied the motion.

Judgment was entered on January 30, 2013. The judgment awarded Total Access damages in the amount of $5.225 million, plus prejudgment interest, against defendants Timothy P. Gates and Rhett Landon Shepard. The judgment also awarded Total Access damages in the amount of $1 million against defaulted defendants Ideal Development and Investments, LLC, MBI, and McBride. The judgment provided that Total Access should not recover any damages from defaulted defendants Anderson, Dakota Holdings, and Kryza. Anderson submitted a memorandum of costs, claiming to be the prevailing party; the memorandum of costs was never filed and is not a part of the trial court's record. The trial court granted Total Access's motion to tax Anderson's costs.

Total Access timely appealed from the judgment. Anderson filed a timely cross-appeal of the order denying relief from default and the postjudgment order granting Total Access's motion to tax Anderson's costs.

DISCUSSION

I.

*DID THE TRIAL COURT ERR IN REFUSING TO ENTER JUDGMENT AGAINST ANDERSON, DAKOTA HOLDINGS, AND KRYZA?*

Total Access argues that the trial court erred in failing to enter default judgments against Anderson, Dakota Holdings, and Kryza.  Total Access further argues that by defaulting, those defendants admitted the truth of the allegations in the complaint; Total Access contends the evidence it presented was sufficient to meet its burden to obtain default judgments against them.

A.

*Standard of Review*

"'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'"  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

In reviewing a challenge to a judgment, including a default judgment, we apply the substantial evidence rule, accepting as true the evidence that supports the judgment, disregarding conflicting evidence, and drawing all reasonable inferences in favor of the judgment.  (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 416.)

However, whether the trial court erred in the manner by which it analyzed issues of liability and damages at the default prove-up hearing is a pure legal issue that we review de novo.  (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 632.)  Further, we independently review the record to determine whether the complaint stated a cause of action as to the claims for relief properly asserted against the defaulted defendants.  (*Entezampour v. North Orange County Community*

5

*College Dist.* (2010) 190 Cal.App.4th 832, 837.) "It is well established a default judgment cannot properly be based on a complaint which fails to state a cause of action against the party defaulted because . . . '[a] defendant who fails to answer admits only facts that are well pleaded.'" (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829.)

## B.

### *Defaulted Defendant Kryza*

Kryza was not named in the complaint. An amendment to the complaint was filed on January 5, 2012, naming Kryza as Doe defendant No. 4. The complaint does not mention the Doe defendants in any of its allegations; the Doe defendants are mentioned in the caption of the complaint and nowhere else. The complaint grouped the named defendants under two broad categories—the MBI Defendants and the Dakota Defendants. The Doe defendants were not included in either group. Each cause of action in the complaint specifies whether it is asserted against both the MBI Defendants and the Dakota Defendants, or against only the MBI Defendants. Therefore, there are no allegations in the complaint against Kryza. (*Falahati v. Kondo*, *supra*, 127 Cal.App.4th at p. 829 [default judgment void against party who was mentioned only in the caption, but not in the body, of the complaint because "'the caption of the complaint constitutes no part of the statement of the cause of action'"].) The trial court did not err in refusing to enter judgment against Kryza. (*Taliaferro v. Taliaferro* (1959) 171 Cal.App.2d 1, 8 [if the complaint shows no ground for relief against the defendant, default judgment cannot be entered].)

## C.

### *Defaulted Defendants Anderson and Dakota Holdings*

Anderson and Dakota Holdings were both named in the body of the complaint, and were included in the Dakota Defendants group. We first consider whether a cause of action was stated against Anderson and Dakota Holdings. Both were named in the first, fourth, fifth, sixth, and seventh causes of action (for conversion, fraud, to set

6

aside fraudulent conveyances, unfair business practices, and unjust enrichment, respectively).  When considering a request to enter a default judgment, the trial court's inquiry into the complaint's adequacy is similar to that triggered by a general demurrer; the trial court looks at whether the complaint contains sufficient factual allegations to support the asserted claims.  (*Alexander v. McDow* (1895) 108 Cal. 25, 29; *Zucco v. Farullo* (1918) 37 Cal.App. 562, 564.)  The court must indulge reasonable inferences in support of the factual allegations in the complaint; mere uncertainties and other defects subject to a special demurrer do not bar a default judgment against the defaulted defendant.  (*Buck v. Morrossis* (1952) 114 Cal.App.2d 461, 466; see *Price v. Hibbs* (1964) 225 Cal.App.2d 209, 218.)

### 1. *First Cause of Action—Conversion*

""""The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.""" (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45.)  Although the cause of action for conversion was alleged against both the MBI Defendants and the Dakota Defendants, it specifically alleged:  "*The MBI Defendants misappropriated and converted the funds held in escrow to the detriment of Plaintiff[] in an amount to be proven at trial.*" (Boldface omitted, italics added.)  As to the Dakota Defendants, the complaint alleged:  "The Dakota Defendants produced a fraudulent piece of paper that they in fact forged in furtherance of this scheme to allow the MBI Defendants to illegally release the Escrowed Funds."  The complaint also alleged that "[w]ithin days of the Dakota Defendants receiving [Total Access']s money, they began to disperse the funds to various international bank accounts to hide the money."  Similarly, the complaint alleged that within days of Anderson receiving Total Access's money, he bought a new Range Rover and real estate and other assets in his girlfriend's name.  The complaint sufficiently

7

alleged the Dakota Defendants—including Anderson and Dakota Holdings—participated in the conversion of Total Access's money.

### 2. *Fourth Cause of Action—Fraud*

"The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages." (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.) "Fraud must be pleaded with specificity rather than with "'general and conclusory allegations."' [Citation.] The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made. [Citation.]" (*Id.* at p. 793.)

The fourth cause of action for fraud alleged that the Dakota Defendants, of which Anderson and Dakota Holdings were a part, "continued to represent that Plaintiff's funds were being used for legitimate purposes when in fact the MBI and Dakota Defendants had already distributed the funds to themselves personally." This allegation meets the requirements of a false representation of fact, and Anderson's and Dakota Holdings's knowledge of its falsity. The complaint also alleged the Dakota Defendants intended to deceive Total Access, Total Access justifiably relied on the representations, and Total Access suffered damages as a result. The complaint stated a cause of action for fraud against Anderson and Dakota Holdings.

8

### 3. *Fifth Cause of Action—Fraudulent Conveyance*

A fraudulent conveyance is "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13; see Civ. Code, § 3439.04.) Absent a transfer by a judgment debtor, there can be no claim of fraudulent conveyance. "'In order to establish a fraudulent conveyance under this section [Civ. Code, [former] § 3439.04], three things or elements must be pleaded and proved: first, there must be a conveyance or the creation of an obligation; second, the transferor must be, at the time of the conveyance, insolvent or the conveyance must render him insolvent; third, the conveyance must have been made, or the obligation incurred, without a fair consideration.'" (*Estate of Heigho* (1960) 186 Cal.App.2d 360, 365-366, fn. omitted.) The complaint alleged Total Access's $1 million investment was dispersed from the escrow account; although lack of consideration was not specifically alleged, that element can reasonably be inferred from the allegations that the disbursements were intended to hide the money and were used to make unauthorized purchases. However, the complaint did not allege the second element of a fraudulent conveyance claim—that it rendered the transferor insolvent—and therefore did not establish a valid claim against Anderson and Dakota Holdings.

### 4. *Sixth Cause of Action—Unfair Business Practices*

The sixth cause of action for unfair business practices under Business and Professions Code section 17200 alleged: "The MBI and Dakota Defendants have violated the Unfair Business Practices Act by engaging in the unlawful, unfair and/or fraudulent business acts and/or practices alleged herein . . . , including the mail fraud, wire fraud, securities fraud." Reading the complaint liberally and accepting the reasonable inferences supported by its allegations, we conclude the complaint adequately alleged the Dakota Defendants' provision of a fraudulent document to allow the escrow

9

money to be removed qualified as an unfair business practice, under any of the three prongs of section 17200—unlawful, unfair, or fraudulent.[1]

### 5. *Seventh Cause of Action—Unjust Enrichment*

The seventh cause of action alleged unjust enrichment against the MBI Defendants and the Dakota Defendants. The cause of action alleged as follows: "In the event that the MBI and Dakota defendants deny that they entered into contracts with Plaintiff to provide professionally competent services, and investment advice, to provide them with a legitimate business transaction with legal benefits, to exercise the applicable standard of care, loyalty and honesty, and to comply with all applicable rules of professional conduct, Plaintiff hereby pleads unjust enrichment in the alternative." The cause of action also alleged: "Defendants provided Plaintiff with advice that defendants knew or should have known to be wrong and improper in furtherance of a scheme to take control of Plaintiff['s] funds. Defendants also acted contrary to the applicable respective rules of professional conduct and contrary to their obligation to Plaintiff to provide them with professionally competent advice, investment advice by basing their advice solely on their desire to coerce Plaintiff[] to surrender large sums of money, rather than providing professional services or providing accurate disclosures." This cause of action is tied directly to the provision of professional services and investment advice, in which activities the Dakota Defendants are not alleged to have participated. The causes of action for breach of fiduciary duty and professional negligence were asserted only against the MBI Defendants, and the complaint alleged that only the MBI Defendants were involved in presenting the investment opportunity to Total Access and convincing Total

---

[1] Anderson argues that all causes of action against him fail because they did not allege that he personally did anything wrong. The complaint successfully alleged causes of action against Anderson by alleging that the Dakota Defendants, of which Anderson was alleged to be a member, collectively were liable for committing causes of action against Total Access.

10

Access to make the investment. There are no allegations that any of the Dakota Defendants were involved in soliciting Total Access's investment. Therefore, the complaint does not state a cause of action against either Anderson or Dakota Holdings for unjust enrichment.

### 6. *Prima Facie Case of Damages*

Once the trial court determined that the allegations of the complaint stated a case against the defaulted defendants as to the causes of action for conversion, fraud, and unfair business practices, Total Access was only required to make out a prima facie case of damages, in an amount not to exceed the damages stated in the complaint. (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361-362.) Following the default prove-up hearing, the trial court issued a minute order reading, in relevant part, as follows: "There are three other defendants not heretofore mentioned in connection with this prove-up: Dakota Holdings, Inc., Matthew Anderson, and Richard Kryza. [¶] At trial there was collateral evidence that perhaps both Messrs Kryza and Anderson had trouble with law enforcement in other venues, and possibly in connection with transactions like the one at issue in the instant litigation. The evidence in this case, however—and that also includes the evidence touching on defendant Dakota Holdings, Inc.—was minimal and insufficient to establish that either of these three played any significant role vis-à-vis plaintiff's investment. The court will therefore not grant judgment against any of them."

The trial court erred in its analysis of liability because it did not deem admitted the facts contained in the well-pleaded causes of action in the complaint. Instead, the court weighed the evidence on the issue of liability against the defaulted defendants who remain before us—Anderson and Dakota Holdings. The court further erred by failing to consider whether Total Access had established a prima facie case of damages against Anderson and Dakota Holdings. To recap: After determining whether the complaint stated causes of action against the defaulted defendants, the trial court

11

should have determined whether Total Access had established a prima facie case of damages and, if so, in what amounts. Instead, the trial court never reached the issue of damages, which was the only remaining issue it should have considered at that point. This is error, requiring reversal.

On this record, we cannot determine whether there was sufficient evidence of damages to meet the relatively low standard of making a prima facie case. In connection with the default prove-up hearing, Total Access submitted the declaration of Brett Radford, its chief executive officer. Radford declared that Total Access delivered $1 million into an escrow account, pursuant to its funding agreement with MBI, on or about December 29, 2009, and that Total Access received nothing in return. Total Access did not provide any evidence of what cause of action this evidence was related to, or evidence that Anderson and Dakota Holdings caused its damages. Total Access did not designate the reporter's transcript of either the damages portion of trial or the default judgment prove-up hearing, which might have given us the information we would need as an appellate court to consider whether Total Access established a prima facie case of damages against Anderson and Dakota Holdings. We remand the matter to the trial court to determine whether, as to the causes of action for conversion, fraud, and unfair business practices, Total Access established a prima facie case of damages. It is up to the trial court to decide whether the evidence already presented to the trial court, by declaration or trial testimony, may be supplemented on remand.

## II.

### *DID THE TRIAL COURT ERR IN DENYING ANDERSON'S MOTION FOR RELIEF FROM DEFAULT?*

On the day set for the start of trial, Anderson filed a motion for relief from default, pursuant to Code of Civil Procedure sections 473 and 473.5. The trial court denied the motion because Anderson failed to prove he was unaware of the pendency of

12

the action against him. The court stated: "But the condition precedent to my doing anything on behalf of Mr. Anderson is he has to prove to me he was legitimately unaware of what was going on and there was legitimate excusable neglect and inadvertence. And I've made my call based on the spotty evidence that I've got . . . ."

"'""A motion seeking such relief [under Code of Civil Procedure section 473] lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. [Citations.] However, the trial court's discretion is not unlimited and must be '"exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice."' [Citations.] [¶] Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations 'very slight evidence will be required to justify a court in setting aside the default.' [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits. [Citations.]'" [Citation.]" (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 695.)

The trial court found Anderson's motion was timely under both sections 473, subdivision (b), and 473.5, subdivision (a) of the Code of Civil Procedure. The court also found that Anderson had properly submitted a proposed response to the complaint along with his motion for relief from default, as required by both sections 473, subdivision (b), and 473.5, subdivision (b). The remaining issues were whether Anderson had actual notice he was named in the lawsuit, and, if not, whether the lack of actual notice was caused by inexcusable neglect.

The trial court found Anderson's declaration that he had not received actual notice of the pendency of the lawsuit against him lacked credibility. We find no abuse of

13

discretion in that finding. The court noted that Anderson's declaration in support of the motion did not provide his home address and did not specify how long he had lived at that address, other than to say it had been for "several years." The court also noted that a law firm representing Anderson in a related federal action acknowledged receiving copies of the pleadings in the present action, which would have alerted it to Anderson being a named defendant in this case. Like the trial court, we find this record extremely thin. However, we find no abuse of discretion by the trial court in determining, on this record, that Anderson failed to establish a lack of actual knowledge of the pendency of the lawsuit or excusable neglect on his part.

Anderson argues that his default was improperly entered in the first place because the trial court never obtained jurisdiction over him. Total Access served Anderson by publication, pursuant to Code of Civil Procedure section 415.50.[2] Anderson contends that the order for service by publication was invalid in two ways: (1) Total Access failed to demonstrate it had exercised reasonable diligence in trying to locate Anderson before seeking the order for service by publication, and (2) the newspaper selected for service was not the one most likely to give actual notice to Anderson. At the hearing on Anderson's motion for relief from default, the trial court addressed this issue as follows: "Therefore, what I'm telling you is back on January 13th—or whenever it

_____

[2] "(a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that either: [¶] (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action. [¶] (2) The party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property. [¶] (b) The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." (Code Civ. Proc., § 415.50, subds. (a), (b).)

14

was—I was satisfied that a request for publication was in order, and I ordered it; it was in order and it was published."

The fact that Anderson's address was later obtained by Total Access and he was personally served at that address with a trial subpoena does not make the service by publication ineffective. The relevant statute authorizes continuing attempts to locate a party even after an order for service by publication has been entered: "Notwithstanding an order for publication of the summons, a summons may be served in another manner authorized by this chapter, in which event the service shall supersede any published summons." (Code Civ. Proc., § 415.50, subd. (d).)

Anderson argues that the default should not have been entered because the request for entry of default was not properly filed. Code of Civil Procedure section 587 provides, in relevant part: "An application by a plaintiff for entry of default under subdivision . . . (c) of Section 585 . . . shall include an affidavit stating that a copy of the application has been mailed to the defendant's attorney of record or, if none, to the defendant at his or her last known address and the date on which the copy was mailed. If no such address of the defendant is known to the plaintiff or plaintiff's attorney, the affidavit shall state that fact." The request for entry of Anderson's default does not state the application was served on Anderson's attorney of record or on Anderson at his last known address; nor does it state Anderson's last known address was unknown to Total Access and its attorneys.

The affidavit requirement is not jurisdictional in nature, however. (*In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 102.) In *In re Marriage of Harris*, the court concluded that the trial court had erred by entering the wife's default because the affidavit in support of the request for entry of default judgment did not aver that the application had been mailed to either the wife or her attorney of record. (*Id.* at pp. 100-101.) However, because there was substantial evidence that the wife had actual

15

notice of the husband's intent to take her default, there was no prejudice. (*Id.* at pp. 102-103.)[3]

Here, Anderson's address for service had not been obtained when the request for entry of default was filed. Total Access's error was in failing to check the box on the form indicating a copy of the request was not mailed to Anderson or his attorney, whose addresses were unknown. The purpose of Code of Civil Procedure section 587 is "to prevent the taking of the default of an unwary litigant, to minimize the possibility that a default might be taken of one who intended to defend on the merits, and to reduce the incidence of motions for relief under Code of Civil Procedure section 473 or under the equity power of the court." (*Davis v. Thayer* (1980) 113 Cal.App.3d 892, 907.) None of these goals would have been achieved in this case by the checking of the blank box on the form.

Finding no prejudicial error, we affirm the trial court's denial of Anderson's motion for relief from default.

III.

*DID THE TRIAL COURT ERR IN GRANTING TOTAL ACCESS'S MOTION TO TAX COSTS?*

Anderson, claiming to be the prevailing party, argues the trial court erred by granting Total Access's motion to tax costs. Anderson's memorandum of costs was never actually filed in the trial court because Anderson was in default and was not permitted to file any pleadings. (*People v. One 1986 Toyota Pickup* (1995) 31

---

[3] Total Access cites *Taylor v. Varga* (1995) 37 Cal.App.4th 750, 759, for the proposition that "[t]he language in [Code of Civil Procedure former] section 587 does not apply to entry of default following service by publication." At the time the request for default was filed in *Taylor v. Varga*, that was true. (*Id.* at pp. 759-760, fn. 10.) Section 587, however, has been amended, and currently applies to entries of default after service by publication as well as after service by other methods.

16

Cal.App.4th 254, 259; *Heathman v. Vant* (1959) 172 Cal.App.2d 639, 647.) Total Access's motion to tax costs, and the trial court's order granting the motion to tax, were unnecessary actions.

Anderson does not cite any authority for the proposition that a defendant who defaulted, but against whom the plaintiff failed to make a prima facie case for damages, is entitled to recover costs. Anderson was not a prevailing party for purposes of recovering costs, and the trial court did not err in granting Total Access's motion to tax costs.

DISPOSITION

The judgment in favor of Kryza is affirmed. The judgment in favor of Anderson and Dakota Holdings is reversed and the matter is remanded to the trial court with directions to (1) enter judgment in favor of Total Access and against Anderson and Dakota Holdings on the causes of action for conversion, fraud, and unfair business practices, and (2) conduct further proceedings to determine the appropriate amount of compensatory and/or punitive damages, if any, which Total Access may recover from Anderson and Dakota Holdings. The postjudgment order to tax costs is affirmed. Total Access to recover costs on appeal against Anderson.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

THOMPSON, J.

17